*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0003p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

RICARDO DIAZ,

                *Plaintiff-Appellant,*

     *v.*

MICHIGAN DEPARTMENT OF CORRECTIONS;
ROGER TIJERNIA, in his official and personal
capacity; JOHN PRELESNIK, Warden, in his
official and personal capacity,

                *Defendants-Appellees.*

No. 11-1075

CONNIE BODEN,

                *Plaintiff-Appellant,*

     *v.*

MICHIGAN DEPARTMENT OF HUMAN
SERVICES, a department of the State of
Michigan, jointly and severally; DEBORAH
COLE,

                *Defendants-Appellees.*

No. 11-1213

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:09-cv-1109—Janet T. Neff, District Judge
No. 1:09-cv-1144—Robert J. Jonker, District Judge.

Decided and Filed: January 7, 2013

Before: ROGERS and KETHLEDGE, Circuit Judges; MARBLEY, District Judge.[*]

_____

[*] The Honorable Algenon L. Marbley, United States District Judge for the Southern District of
Ohio, sitting by designation.

---

**COUNSEL**

---

**ON BRIEF:** Joni M. Fixel, FIXEL LAW OFFICES, Okemos, Michigan, for Appellants. Michael O. King, Jr., OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellees.

---

**OPINION**

---

ALGENON L. MARBLEY, District Judge.  In *Nevada Department of Human Resources v. Hibbs*, the Supreme Court held that a state employee may recover money damages in federal court for a state's failure to comply with the family-care provision of the Family Medical Leave Act ("FMLA" or "the Act").  538 U.S. 721, 725 (2003); *see generally* 29 U.S.C. § 2612(a)(1)(C).  After the Supreme Court's decision, this Circuit held that a plaintiff could not bring a private suit for damages against a state official for alleged violations of the FMLA arising from claimed entitlement leave under 29 U.S.C. § 2612(a)(1)(D) because the rationale in *Hibbs* did not extend to the FMLA's self-care provision.  *Touvell v. Ohio Dep't of Mental Retardation & Developmental Disabilities*, 422 F.3d 392, 400 (6th Cir. 2005).  Finally, citing *Touvell*, the Supreme Court recently held that suits against the states for money damages under § 2612(a)(1)(D) are barred by the states' immunity as sovereigns in our federal system. *Coleman v. Court of Appeals of Md.*, 132 S. Ct. 1327, 1332 (2012).[1]

In light of these precedents, Appellants Ricardo Diaz and Connie Boden attempt to bring 42 U.S.C. § 1983 "and laws" suits[2] to enforce their purported FLMA rights to self-care leave against state officials in their individual capacities.  Appellants contend

---

[1]The Supreme Court had not yet decided *Coleman* when the parties filed their briefs in this appeal.

[2]Section 1983 provides that "[e]very person who . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution *and laws*, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." (Emphasis added).

they should also be allowed to bring a claim for equitable, prospective relief in the form of reinstatement through the *Ex parte Young*[3] exception to the Eleventh Amendment. We **AFFIRM** the district courts' dismissals of Appellants' claims for monetary damages because, for various reasons, Appellants cannot bring § 1983 "and laws" suits to enforce their purported rights under the FMLA self-care provision. We **REVERSE** and **REMAND** the district court's dismissal of Count III in Diaz's case, however, because the district court erred when it dismissed Appellant Diaz's claim for equitable, prospective relief in the form of reinstatement.

I.

A.

Appellant Ricardo Diaz was employed by the Michigan Department of Corrections ("MDOC") when he was diagnosed with heart and abdominal conditions that forced him to take intermittent self-care leave. Diaz alleges he was fired for time and attendance violations after taking various intermittent leaves and informing his manager and the warden at MDOC that, as a result of his condition, it would be difficult to predict when he would need to take time off in the future.

Diaz sued MDOC, his manager, and the warden. He brought causes of action alleging: interference with his FMLA rights against the manager and the warden in their individual capacities in violation of § 1983 (count I); retaliation for exercising his FMLA rights against the manager and the warden in their individual capacities in violation of § 1983 (count II); deprivation of a protected federal right against the manager and the warden in their official capacities in violation of the doctrine of *Ex parte Young* (count III); and violations of state law against all defendants (count IV). With respect to count III, Diaz sought, *inter alia*, an order "returning [him] to his position at MDOC with no loss of seniority, as prospective relief from the continuing violation of being denied his rightful position," pursuant to the *Ex parte Young* doctrine. 09-cv-1109, Doc. 2 at 11.

---

[3] 209 U.S. 123 (1908).

MDOC, the manager, and the warden filed a motion to dismiss all counts, which was granted by the district court. The district court dismissed counts I and II because the FMLA contains a comprehensive statutory remedial scheme that is more restrictive than the remedies provided under § 1983, thus precluding Diaz from utilizing § 1983 as a recovery vehicle. The district court also held that Diaz was prevented from properly invoking the *Ex parte Young* exception to sovereign immunity in count III because:

> addressing plaintiff's request for reinstatement would necessitate delving into the issue of whether defendants violated plaintiff's FMLA rights, whether there is a continuing violation, and whether reinstatement is appropriate. If this Court cannot look back to make a determination on the substantive FMLA issue, it cannot decide, as a prospective matter, if the alleged violation continues. The Eleventh Amendment therefore presents a jurisdictional bar as plaintiff cannot properly invoke the *Ex Parte Young* exception to Eleventh Amendment sovereign immunity.

09-cv-1109, Doc. 17 at 8-9. Diaz's state law claims were also dismissed by the district court, but Diaz does not contest the dismissal of those claims in this appeal.

B.

Appellant Connie Boden was employed by the Michigan Department of Human Services ("MDHS") when she was placed on stress leave by her doctor. Boden alleges that her supervisor dramatically increased her workload and disciplined her for petty work-related infractions because of the self-care leave she took.

Boden sued MDHS and her supervisor, alleging: interference with her FMLA rights against her supervisor in her individual capacity in violation of § 1983 (count I); retaliation for exercising her FMLA rights against her supervisor in her individual capacity in violation of § 1983 (count II); claims for prospective relief in the form of an injunction for further acts of discrimination and retaliation against her supervisor in her official capacity, pursuant to the doctrine of *Ex parte Young* (count III); and violations of state law against all defendants (counts IV–V).

MDHS and the supervisor filed a motion to dismiss all counts, which was granted by the district court. "For reasons stated in detail in the hearing," the district court

concluded that it lacked subject matter jurisdiction over counts I-III, and declined to exercise supplemental jurisdiction over Boden's state law claims.  09-cv-1144, Doc. 12 at 1.

## II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, which grants us jurisdiction over final decisions of the district courts.

## III.

We review a district court's decision dismissing a complaint under Federal Rule of Civil Procedure 12(b)(6) *de novo*.  *Kostrzewa v. City of Troy*, 247 F.3d 633, 638 (6th Cir. 2001).  For purposes of this appeal, we treat as true all well-pled allegations in the complaints.  *Id.*

## IV.

## A.

Appellants argue that they have a right to self-care leave under the FMLA, but that *Touvell* has left them a "right without a remedy."  *See Touvell*, 422 F.3d at 400. They should be able to use § 1983 "and laws" suits to enforce their FMLA self-care rights against state officials in their individual capacities, Appellants contend, because they have no remedy.  Section 1983 provides that "[e]very person who . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution *and laws*, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." (Emphasis added).  Recognizing that the Supreme Court's doctrine under *Sea Clammers*[4]/*Rancho Palos Verdes*[5] would typically bar the type of § 1983 "and laws" suit they attempt to bring, Appellants encourage us to

---

[4]453 U.S. 1 (1981).

[5]544 U.S. 113 (2005).

consider the purpose and logic behind the *Sea Clammers/Rancho Palos Verdes* doctrine, which, they argue, indicate their § 1983 "and laws" suits should not be barred.

The FMLA entitles eligible employees to take up to 12 work weeks of unpaid leave per year for: (A) "the birth of a son or daughter . . . in order to care for such son or daughter," (B) "the placement of a son or daughter with the employee for adoption or foster care," (C) the care of a "spouse, or a son, daughter, or parent" with a "serious health condition," and (D) the employee's own "serious health condition that makes the employee unable to perform the functions" of their employment. 29 U.S.C. § 2612(a)(1). Subsection (D) is commonly referred to as the "self-care" provision. The Act creates a private right of action to seek both equitable relief and money damages "against any employer (including a public agency) in any Federal or state court of competent jurisdiction." 29 U.S.C. § 2617(a)(2).

In *Hibbs*, the Supreme Court held that Congress could subject states to suit for violations of subparagraph (C), which is commonly referred to as the "family-care" provision. 538 U.S. at 725; *see generally* 29 U.S.C. § 2612(a)(1)(C). While "the Constitution does not provide for federal jurisdiction over suits against nonconsenting states," sovereign immunity may be abrogated by Congress if it "makes its intention to abrogate unmistakably clear in the language of the statute and acts pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment." *Hibbs*, 538 U.S. at 726 (internal citations omitted).

The *Hibbs* Court found that the "clarity of Congress' intent" with respect to the FMLA was "not fairly debatable" because the Act enables employees to sue employers, including public agencies, *id.*; *see* 29 U.S.C. § 2617(a)(2), and "public agency" is defined under the FMLA to include both "the government of a state or political subdivision thereof" and "any agency of . . . a State, or a political subdivision of a State." 29 U.S.C. § 203(x). The case then turned on "whether Congress acted within its constitutional authority when it sought to abrogate the states' immunity for purposes of the FMLA's family-leave provision." *Hibbs*, 538 U.S. at 726. The Court held that Congress had, indeed, acted within the bounds of its authority because it cited evidence

that the states had family-leave policies that differentiated on the basis of sex and administered even neutral family-leave polices in a discriminatory fashion on the basis of sex. *Id.* at 730–32. The Supreme Court therefore held that states could be subject to suit for violations of the family-care provision. *Id.* at 735.

Our Circuit held, thereafter, that the reasoning articulated in *Hibbs* did not apply in the context of the FMLA's self-care provision. *Touvell*, 422 F.3d at 400, 405. "[W]hile *Hibbs* found that Congress had adduced sufficient concrete evidence of discrimination by the states regarding the availability and consequences of family-care leave, there is no equivalent evidence that the self-care provision of the FMLA was intended to, or did, target similar discrimination." *Id.* at 405. The self-care provision, rather, appears to be "social legislation designed to protect the seriously ill and their families regardless of gender." *Id.* Although an "admirable goal, it is not one that permits Congress to abrogate the Eleventh Amendment immunity of the states from private suit for damages." *Id.*

After *Touvell*, the Supreme Court held that suits against states for money damages under the self-care provision are barred by the doctrine of sovereign immunity. *Coleman*, 132 S. Ct. at 1332. The Court noted that its decision was "[i]n agreement with every Court of Appeals [decision] to have addressed this question," including *Touvell*. *Id.* (citations omitted). Unlike the legislative history of the family-care provision, which indicated that "Congress relied upon evidence of a well-documented pattern of sex-based discrimination in family-leave policies," *id.* at 1334 (citing *Hibbs*, 538 U.S. at 730–31), the legislative history of the self-care provision "reveals a concern for the economic burdens on the employee and the employee's family resulting from illness-related job loss and a concern for discrimination on the basis of illness, not sex." *Id.* at 1335 (citing S. Rep. No. 103-3, at 11–12 (1993), *reprinted in* 1993 U.S.C.C.A.N. 3, 11–12; H.R. Rep. No. 101-28, at 23 (1989)).

Conceding that the self-care provision did offer some women a benefit by allowing them to take leave for pregnancy-related illnesses, the Court nevertheless reasoned that the remedy in the provision "is not congruent and proportional to any

identified constitutional violations." *Id.* For example, "[a]t the time of the FMLA's enactment, 'ninety-five percent' of state employees had paid sick-leave plans at work, and 'ninety-six percent' had short-term disability protection," and thus, "state employees presumably could take leave for pregnancy-related illnesses under these policies." *Id.* Suits against a state under § 2612(a)(1)(D) are barred, the Court held, because Congress had failed to "identify a pattern of constitutional violations and tailor a remedy congruent and proportional to the documented violations" when it allowed employees to sue states for money damages for violations of the self-care provision. *Id.* at 1338; *see Steers v. Michigan*, No. 12-10900, 2012 WL 2568169, at *2 (E.D. Mich. July 3, 2012) (citing *Coleman* and explaining that, while the plaintiff who was suing the state could potentially recover damages for the alleged FMLA violations under the family-care provision, she could not do so under the self-care provisions).

While Appellants attempt to bring § 1983 "and laws" suits as a result of this precedent, their attempts fail for numerous reasons. First, Appellants bring FMLA claims against state officials in their *individual* capacities. This Circuit has held that public employers cannot be held individually liable under the FMLA. *Mitchell v. Chapman*, 343 F.3d 811, 825–26, 829 (6th Cir. 2003) (deciding "whether the FMLA provides for individual liability against a public employer" as a "matter of first impression," and finding, because of the Act's text and framework, that it does not); *see also Wascura v. Carver*, 169 F.3d 683, 687 (11th Cir. 1999) (same); *but see Darby v. Bratch,* 287 F.3d 673, 680–82 (8th Cir. 2002) (holding that, as an issue "of first impression for our Court," a public official may be held liable in his or her individual capacity for violations of the FMLA); *Modica v. Taylor*, 465 F.3d 174, 184–87 (5th Cir. 2006) (same).

Moreover, Appellants do not have a right to sue state officials for monetary damages for alleged violations of the self-care provision of the FMLA. *See Coleman*, 132 S. Ct. at 1332; *Touvell*, 422 F.3d at 400. Without the right to bring suit against state officials for monetary damages under the Act's self-care provision, Appellants have no rights that can be enforced through § 1983. *See* 42 U.S.C. § 1983 ("[e]very person who

. . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of *any rights*, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress") (emphasis added). Appellants cannot use § 1983 "and laws" suits to circumvent Supreme Court precedent in an attempt to enforce a right to money damages that they do not have.

Even if Appellants had the right to seek damages from state officials for alleged violations of the FMLA's self-care provision, the *Sea Clammers/Rancho Palos Verdes* doctrine would prevent Appellants from enforcing that right using a § 1983 action. In *Middlesex County Sewerage Authority v. National Sea Clammers Association*, fishermen brought suit alleging violations of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* ("FWPCA"), and the Marine Protection, Research, and Sanctuaries Act of 1972, 33 U.S.C. § 1401 *et seq.* ("MPRSA"), after polluters damaged fishing grounds. 453 U.S. 1, 4–5 (1981). While the FWPCA and the MPRSA contain express citizen-suit provisions, they authorize private parties to sue for injunctive relief only. *Id.* at 13–14. Consequently, Plaintiffs brought federal common law claims as well to recover money damages. *Id.* at 4–5.

The Supreme Court held that plaintiffs could not use federal common law or § 1983 as vehicles to enforce federal statutory laws where the FWPCA and MPRSA contained elaborate enforcement provisions. *Id.* at 14-15, 21. With "so many specific statutory remedies, including the two citizen-suit provisions," the Court found it difficult to believe "that Congress intended to preserve the § 1983 right of action." *Id.* at 20.

Similar to the FWPCA and MPRSA, the Telecommunication Act of 1996 ("TCA"), 110 Stat. 56, which was at issue in *Rancho Palos Verdes*, permits private parties to seek redress through administrative channels and injunctive relief, but not through monetary damages. *See Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 116, 118 (2005). The Supreme Court held that Congress must have intended for the remedies under the TCA to be the exclusive relief available to plaintiffs alleging a TCA violation

because the TCA's remedy was more restrictive than the remedy in a § 1983 action. *Id.* at 121–26.

As a result of the *Clammers/Rancho Palos Verdes* precedent, we must examine whether (1) the FMLA's remedial provisions are comprehensive, which would indicate that Congress intended to exclude other remedies; and (2) whether the FMLA's remedies are more restrictive than § 1983's remedies. We keep in mind that "[t]he provision of an express, private means of redress in the statute itself is ordinarily an indication that Congress did not intend to leave open a more expansive remedy under § 1983." *Id.* at 121.

The FMLA's remedial provisions are comprehensive on their face. *See* 29 U.S.C. § 2617(a)(1). A plaintiff who successfully asserts a FMLA claim can receive damages including, *inter alia*, wages, salary, employment benefits, liquidated damages, interest, and equitable relief. *Id.* There are provisions in the FMLA which provide methods for calculating damages in the form of actual monetary losses sustained where wages, salary, employment benefits, or other compensation have not been denied or lost. 29 U.S.C. § 2617(a)(1)(A)(i)(II). A plaintiff can also be awarded liquidated damages in certain scenarios. 29 U.S.C. § 2617(a)(1)(A)(iii). These provisions, which provide direction as to how to calculate damages in particular circumstances, are more restrictive than the remedies available under § 1983.

It is apparent from the plain language of the FMLA remedial provisions that Congress intended to exclude other remedies. The FMLA therefore precludes resort to § 1983.

The district court in Diaz's case dismissed Diaz's FMLA claims on the basis that a § 1983 "and laws" suit is barred by the *Clammers/Rancho Palos Verdes* doctrine. Appellants concede that the district court's application of the *Clammers/Rancho Palos Verdes* doctrine was "a technically correct application," but argue that the district court "fail[ed] to give effect to the *purpose* and logic of those decisions." Appellants Br. at 19 (emphasis in original). That purpose and logic, Appellants argue, is to prevent plaintiffs from using § 1983 as "an end-run around statutory remedial scheme, not to

prevent plaintiffs from ever being able to enforce the right granted by statute [as Appellants contend they are here]." *Id.* Appellants argue they have no remedy to enforce their self-care rights as a result of this Circuit's decision in *Touvell.*

Appellants' purpose and logic argument is unpersuasive because, as explained *supra*, they do not have the right to bring suit for monetary damages against their state officials under the self-care provision of the FMLA. As explained in *Coleman*, if Congress wants to abrogate states' immunity under the self-care provision, it must do so through a valid exercise of its power under § 5 of the Fourteenth Amendment. 132 S. Ct. at 1338. Appellants may not circumvent sovereign immunity by bringing § 1983 "and laws" suits.

### B.

Appellants argue that they can seek prospective relief against state officials, in their official capacity, in the form of reinstatement to their positions, through *Ex parte Young*. Appellants contend that termination in retaliation for taking self-care leave under the FMLA is an ongoing violation and reinstatement into their positions is prospective relief.

Our examination of the record reveals that only Appellant Diaz was terminated and seeks reinstatement. Appellant Boden's amended complaint contains no allegations that she was terminated in retaliation for taking self-care leave. Boden did seek prospective relief in the form of an injunction for further acts of discrimination and retaliation (count III), but she does not make any arguments on appeal related to count III. We therefore address only Diaz's argument here.[6]

The requested reinstatement remedy forces us to examine the extent to which the *Ex parte Young* doctrine saves a FMLA claim for prospective relief from the Eleventh Amendment bar. While on its face the Eleventh Amendment bars "any suit in law or

---

[6] In her third claim for relief, Boden asks for injunctive relief preventing her supervisor, in her official capacity, from further acts of discrimination and retaliation. Such relief could, potentially, be construed as prospective in nature and subject to the *Ex parte Young* exception, but Appellants make no arguments in their briefs related to Boden's third count. Therefore, we need not address it on this appeal.

equity, commenced or prosecuted against one of the United States," the Supreme Court announced an exception to Eleventh Amendment sovereign immunity in *Ex parte Young* for claims for injunctive relief against individual state officials in their official capacities. *See* 209 U.S. 123 (1908). In order to fall within the *Ex parte Young* exception, a claim must seek prospective relief to end a continuing violation of federal law. *See MacDonald v. Vill. of Northport, Mich.,* 164 F.3d 964, 970-72 (6th Cir. 1999). Retroactive relief is barred by the Eleventh Amendment. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 103 (1984). Importantly, in *Carten v. Kent State University*, this Circuit held that "claims for reinstatement are prospective in nature and appropriate subjects for *Ex parte Young* actions." 282 F.3d 391, 396 (6th Cir. 2002) (citing *Turker v. Ohio Dep't. of Rehab. & Corrs.*, 157 F.3d 453, 459 (6th Cir. 1998)).

The FMLA's remedial provisions state that an employer who violates the FMLA may be liable to an eligible employee "for such equitable relief as may be appropriate, including employment, reinstatement, and promotion." 29 U.S.C. § 2617(a)(1)(B). Under this Circuit's precedent and *Ex parte Young*, the Eleventh Amendment does not bar suits for equitable, prospective relief, such as reinstatement, against state officials in their official capacity. Congress did not have to abrogate sovereign immunity where a state employee sues a state official in his or her official capacity seeking equitable, prospective relief in the form of reinstatement for violations of the self-care provision because the Eleventh Amendment does not act as a bar to such suits in the first instance. Section 2617(a)(1)(B) was, therefore, a constitutional exercise of Congress's powers.

Notably, the holdings in both *Touvell* and *Coleman*[7] are narrower than both parties acknowledge. For example, Appellees argue that: "Appellants have no rights derived from FMLA. This Court has held that the self-care provisions of FMLA are unconstitutional as applied to the states." Appellee Br. at 17. This characterization of precedent is not accurate. The Supreme Court and this Circuit barred suits *for damages*

---

[7]The parties had the benefit of the former opinion, but not the latter, when briefing these issues. Admittedly, the Supreme Court in *Coleman* was more explicit in explaining that the Court's holding applied only to suits for monetary damages, but a careful reading of *Touvell* indicates that its holding was similarly limited.

only, not for equitable relief. *Coleman*, 132 S. Ct. at 1338 (holding that Congress did not validly abrogate states' sovereign immunity from suits for *money damages* in enacting FMLA's self-care provision); *Touvell*, 422 F.3d at 400 ("[W]e agree . . . *Hibbs* does not apply to the self-care provision of the FMLA, and that private suits *for damages* may not be brought against states for alleged violations of the Act arising from claimed entitlement to leave under § 2612(a)(1)(D)") (emphasis added). FMLA's provision providing a right of action against public agencies for equitable relief has not, therefore, been deemed unconstitutional. *See* 29 U.S.C. § 2617(a)(2) ("[a]n action to recover the damages *or equitable relief* prescribed in paragraph (1) may be maintained against any employer (including a public agency) in any Federal or state court of competent jurisdiction by any one or more employees") (emphasis added).

The district court dismissed Diaz's claim for reinstatement, reasoning that "[i]f this Court cannot look back to make a determination on the substantive FMLA issue, it cannot decide, as a prospective matter, if the alleged violation continues." (09-cv-1109, Doc. 17 at 8-9.) To support its reasoning, the district court quoted *Verizon Maryland Inc. v. Public Service Commission of Maryland*, in which the Supreme Court explained that "a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective" to determine whether the *Ex parte Young* doctrine avoids an Eleventh Amendment bar to suit. 535 U.S. 635, 645 (2002) (internal citations and quotation marks omitted).

The district court's reasoning is flawed, as is Appellees' unsupported contention that "any inquiry into whether there is a continuing violation of a federal law would require the trial court to examine the merits of Appellants' alleged FMLA violations" and "is barred by the Eleventh Amendment." Appellee Br. at 18. The Eleventh Amendment bars a plaintiff from seeking retrospective relief against a state official in his or her official capacity, but it does not bar the district court from examining the allegations to determine whether there is an ongoing violation of federal law. This Court

has held that a claim for reinstatement is prospective relief, *Carten*, 282 F.3d at 396, and, neither *Touvell* nor *Coleman* bars this inquiry.

In *Seminole Tribe of Florida v. Florida*, the Supreme Court held that, "where Congress has prescribed a detailed remedial scheme for the enforcement against a state of a statutorily created right, a court should hesitate before casting aside those limitations and permitting an action against a state officer based upon *Ex parte Young*." 517 U.S. 44, 74 (1996). Appellees argue that Diaz's claim for reinstatement is barred by *Seminole Tribe*.

The *Seminole Tribe* precedent does not prevent Diaz from bringing his claim for reinstatement. The *Seminole Tribe* Court explained that, although the Supreme Court often found "federal jurisdiction over a suit against a state official when that suit [sought] only prospective injunctive relief in order to 'end a continuing violation of federal law,'" the situation presented in *Seminole Tribe* was "sufficiently different from that giving rise to the traditional *Ex parte Young* action so as to preclude the availability of that doctrine." *Id.* at 73 (citing *Green v. Mansour*, 474 U.S. 64, 68 (1985)). The Court's holding that *Ex parte Young* did not apply was based on specific language in the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2710 *et seq.*, which set up intricate procedures related to equitable relief under its remedial scheme. *Id.* at 74–75.

For example, under 25 U.S.C. § 2710(d)(3), when *Seminole Tribe* was decided, if a state failed to negotiate in good faith in violation of the Indian Gaming Regulatory Act, the only remedy prescribed under 25 U.S.C. § 2710(d)(3) was an order directing the State and the Indian tribe to conclude a compact within 60 days. *Id.* at 74. If the parties failed to conclude a compact within the 60-day period, the only sanction available under § 2710(d)(3) was that each party be required to submit a proposed compact to a mediator charged with selecting the proposal that best embodied the terms of the Indian Gaming Regulatory Act. *Id.* Finally, if the state failed to accept the mediator's chosen compact, the mediator would so notify the Secretary of the Interior, who would in turn prescribe regulations governing class III gaming on the tribal lands at issue. *Id.* at 74–75. Allowing a claim to proceed under *Ex parte Young* would have rendered such procedures

superfluous because a state official would have been exposed to the full remedial power of the federal court. *Id.* at 75. The Supreme Court made clear, however, that "we do not hold that Congress *cannot* authorize federal jurisdiction under *Ex parte Young* over a cause of action with a limited remedial scheme," but "only that Congress did not intend that result in the Indian Gaming Regulatory Act." *Id.* at 75 n.17 (emphasis in original).

The FMLA's remedial provision simply states that an employer who violates the FMLA shall be liable for "for such equitable relief as may be appropriate, including employment, reinstatement, and promotion." *See* 29 U.S.C. § 2617(a)(1)(B). This language does not create intricate procedures like those that, in *Seminole Tribe*, prevented the Court from allowing a claim to proceed under *Ex parte Young*.

Thus, the district court erred when it dismissed Diaz's claim for equitable, prospective relief in the form of reinstatement. The appropriate inquiry on remand is whether Diaz sufficiently alleged an ongoing violation of federal law to maintain his equitable claim.

## V. CONCLUSION

We **AFFIRM** the district court's decision dismissing all of Boden's claims. We also **AFFIRM** the district court's decision dismissing Diaz's FMLA claims brought under § 1983 (counts I and II), but **REVERSE** and **REMAND** the district court's decision dismissing Diaz's claim for reinstatement (count III).