RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0169p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

COREY S. CRUGHER, an individual,
                              *Plaintiff-Appellant*,

                                                              No. 13-2425

             *v.*

JOHN PRELESNIK, Warden, in his official and
individual capacity,
                              *Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:13-cv-00416—Robert Holmes Bell, District Judge.

Argued: May 8, 2014

Decided and Filed:  August 1, 2014

Before:  BOGGS and CLAY, Circuit Judges; and COHN, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Collin H. Nyeholt, FIXEL LAW OFFICES, PLLC, Okemos, Michigan, for Appellant. Jeanmarie Miller, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee **ON BRIEF:** Collin H. Nyeholt, Joni M. Fixel, FIXEL LAW OFFICES, PLLC, Okemos, Michigan, for Appellant. Jeanmarie Miller, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

COHN, D.J., delivered the opinion of the court, in which BOGGS, J., joined. CLAY, J. (pp. 13–19), delivered a separate dissenting opinion.

---

[*] The Honorable Avern Cohn, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

———————————

**OPINION**

———————————

AVERN COHN, Senior District Judge.  This is an employment discrimination case.  Plaintiff/Appellant Corey Crugher ("Crugher"), a Michigan Department of Corrections ("MDOC") employee working at the Ionia Correctional Facility ("ICF"), brought this action against Defendant/Appellee John Prelesnik ("Prelesnik"), the warden of the ICF, claiming that Crugher was retaliated against, subjected to harassment and intimidation, and ultimately terminated after he took time off under the self-care provision of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2612(a)(1)(D).  As a form of relief, Crugher sought reinstatement at the ICF.  The district court granted Prelesnik's motion to dismiss under Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure on the grounds that the claim is barred by sovereign immunity or, alternatively, is untimely under the two-year limitations period in the FMLA.  Crugher appeals.

This appeal requires us to decide whether an action by a state employee seeking prospective injunctive relief (reinstatement) against a state official under the FMLA's self-care provision applies the limitations period contained in the FMLA.  We hold that it does.  We also agree with the district court that Crugher failed to state a willful violation of the FMLA, and that allowing Crugher to amend his complaint to allege willfulness—to take advantage of an extended three-year limitations period—would be futile.  Therefore, we affirm.

**I.**

**A.**

On February 27, 1994, Crugher began employment for the MDOC as a corrections officer assigned to the Saginaw Mound Correctional Facility in Detroit, Michigan.  Five years later, in 1999, Crugher developed irritable-bowel syndrome ("IBS") and generalized anxiety disorder ("GAD").  As a result of these chronic medical

conditions, Crugher suffered abdominal pain, diarrhea, bleeding, cramping, and fatigue. Crugher's "flare-ups" lasted 24 hours once every six weeks, and it was necessary for him to miss work during a flare-up.

Crugher excelled as a corrections officer despite his medical conditions. He took time off and intermittent FMLA leave when necessary.

In November 2009, Crugher was transferred to ICF. While employed at ICF, Crugher continued to take as-needed medical leaves pursuant to the self-care provision of the FMLA.

Crugher says he was subjected to harassment and intimidation at ICF because he took FMLA leave. For example, on February 8, 2010, Crugher was given a written counseling memorandum "for incurring lost time in four consecutive pay periods," specifically related to his "utilization of sick leave." When using sick leave in the future, Crugher was "instructed to provide medical documentation" from his physician including "diagnosis and prognosis, the reason [he] could not work, and the expected date of return to work."

On April 23, 2010, Crugher was placed on "interim rating," where his performance was closely monitored for 180 days, because his "time and attendance issues" did not improve. Crugher was instructed that, "[i]n the future [his] time and attendance will be closely monitored for unscheduled absences." Crugher was further reminded of the requirement to provide medical documentation "for each instance of sick-leave usage per the conditions outlined in the February 8, 2010 counseling memo." Crugher's follow-up rating at the conclusion of the 180 days commended him for having "good time and attendance."

In a subsequent follow-up rating sometime after October 20, 2010,[1] Crugher was placed back on interim rating for a period of 180 days. Crugher was criticized for his continuous abuse of "time and attendance" from August 2010 through October 2010.

---

[1] The interim employee rating is not signed or dated, but it refers to Crugher's non-compliance with the employee handbook as late as October 20, 2010.

Crugher was warned that "[f]ailure to correct these deficiencies will result in further disciplinary action up to and including dismissal."[2]

On November 17, 2010, Crugher presented to his doctor with severe abdominal pain, diarrhea, bleeding, cramping, and fatigue. Following the doctor's appointment, Crugher submitted a request for FMLA leave. He was approved for intermittent FMLA leave from November 22, 2010 through May 21, 2011.

Subsequent to being approved for intermittent FMLA leave, on November 23, 2010, Crugher was notified that he was to attend a "Performance Rating Conference" because of "non-compliance with the DOC Employee Handbook, Employment Requirements, 3. Use of Leave."[3] On January 11, 2011, Crugher was discharged.

### B.

On January 14, 2011, Crugher's union filed a grievance on his behalf claiming that he was wrongfully terminated. It was ultimately determined that Crugher's termination was justified because he "continued to liquidate sick leave in conjunction with regular days off and holidays. His unsatisfactory service occurred while on a second unsatisfactory service rating and a last chance agreement."

On April 16, 2013, after exhausting his administrative remedies, Crugher filed a one-count complaint claiming that he was terminated because of his protected FMLA leave and seeking reinstatement to his position. Crugher relied on *Ex parte Young*, 209 U.S. 123 (1908), and *Diaz v. Michigan Department of Corrections*, 703 F.3d 956 (6th Cir. 2013).

As noted above, the district court dismissed the action on the grounds that Prelesnik was not the proper defendant because he did not have anything to do with the

---

[2] Crugher denies receiving the document placing him back on interim rating for 180 days. The complaint states that "[t]here is question as to whether [Crugher] was ever actually placed on this second Interim Rating, or whether it was considered and never acted upon."

[3] Crugher believes that he was not given this document.

alleged violation of Crugher's rights under the FMLA.[4]  As such, the district court reasoned that the state was the real party in interest and that Eleventh Amendment sovereign immunity precluded Crugher's claim.  Alternatively, the district court held that Crugher's claim was barred by the FMLA's two-year statute-of-limitations period.

## II.

Prelesnik's motion to dismiss was filed under Federal Rules of Civil Procedure 12(b)(1) and (6).

## A.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) "may either attack the claim of jurisdiction on its face or it can attack the factual basis of jurisdiction." *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005).  Where, as here, the district court did not resolve any factual disputes, "our review of the district court's application of the law to the facts is de novo." *Id.*

## B.

A district court's dismissal of a plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6) is also reviewed de novo. *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007).  The complaint is construed in the light most favorable to the plaintiff, and we accept the complaint's allegations as true, drawing all reasonable inferences in favor of the plaintiff. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Evans-Marshall v. Bd. of Educ.*, 428 F.3d 223, 228 (6th Cir. 2005)).  Ultimately, "[t]he defendant has the burden of showing that the plaintiff has failed to state a claim for relief." *Id.* (citation omitted).

---

[4]The court does not address this aspect of the district court's holding because it is not necessary to the resolution of this appeal.

## III.

Under 29 U.S.C. § 2617(c)(1), FMLA actions must be brought "not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought." This period is extended to three years if the plaintiff alleges a "willful violation" of the FMLA. § 2617(c)(2). Crugher admits that the "last event constituting the alleged violation for which the action is brought" is his termination from employment that occurred on January 11, 2011. Crugher did not file this action until April 16, 2013, over three months past the FMLA's two-year limitations period.

Crugher argues that the FMLA's statute-of-limitations period does not apply because his claim is brought "under *Ex parte Young*."[5] Appellant Br. at 28. Alternatively, Crugher argues that his claim falls within the FMLA's three-year limitations period for willful violations.

## A.

The self-care provision of the FMLA allows an employee "a total of 12 workweeks of leave during any 12-month period" for, inter alia, ". . . a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). To enforce a violation of the self-care provision, an employee may bring an action for damages, *id.* at § 2617(a)(1)(A), or for equitable relief "including employment, reinstatement, and promotion," *id.* at § 2617(a)(1)(B).

The Supreme Court, however, has determined that the FMLA's self-care provision is not enforceable in a private action seeking money damages against a state official based on principles of Eleventh Amendment sovereign immunity. *Coleman v. Court of Appeals of Md.*, 132 S. Ct. 1327, 1332 (2012).[6] We have since held that a state

---

[5] *Ex parte Young* created an exception to a state's sovereign immunity—a legal fiction—"that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes." *Va. Office for Prot. and Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011) (citation omitted).

[6] Four justices joined in the opinion. Justice Scalia concurred in the judgment.

employee is permitted to seek prospective relief against a state official for violating the self-care provision as long as the employee sufficiently alleges "an ongoing violation of federal law to maintain his equitable claim." *Diaz v. Mich. Dep't of Corrs.*, 703 F.3d 956, 966 (6th Cir. 2013).

Crugher argues that, since he is bringing an "*Ex parte Young* claim,"[7] the FMLA's two-year statute of limitations period does not apply to his claim. He states that "the remedies available in an action for prospective injunctive relief, pursuant to *Ex parte Young*, will not be the same as an action under the underlying federal claim." Appellant Br. at 28–29. Crugher, citing *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996), contends that we must look to analogous state law actions to determine the appropriate limitations period. We disagree.

Crugher's claim is not an "*Ex parte Young* claim"; it is a FMLA claim seeking prospective injunctive relief, expressly permitted by § 2617(a)(2) and (1)(B). *Ex parte Young* simply allows Crugher's claim for reinstatement, which would otherwise be barred by sovereign immunity, to be brought against Prelesnik. Importantly, our decision in *Diaz* stated that it is "not accurate" that state employees "have no rights *derived from the FMLA*." *Diaz*, 703 F.3d at 964 (emphasis added). The best reading of *Diaz*—and the one most consistent with Supreme Court case law on the *Ex parte Young* doctrine—is that equitable-relief suits are "derived from the FMLA" itself. *Ibid.* It is true that in some instances federal courts must determine whether the Supremacy Clause creates an implied right of action against a state official, where there is no express cause of action, and where Congress intended to create a private right and private remedy. *See, e.g.*, *Arendale v. City of Memphis*, 519 F.3d 587, 596 (6th Cir. 2008) (citing *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)). In these instances, there may not be a specific statute setting a limitations period, and courts look elsewhere to determine the proper limitations period.[8] Indeed, in *Ex parte Young*, a state official was sued not for violating

---

[7]Crugher sometimes refers to his claim as a "*Diaz* claim."

[8]The dissent relies on *Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 554 (6th Cir. 2012), for the proposition that *Ex parte Young* recognized an implied cause of action under the Supremacy Clause. *Chase Bank*, however, identified only one explanation of causes of action in suits pursuant to *Ex*

a statute but for violating the Constitution.  Here, however, § 2617(a)(1)(B) of the FMLA expressly permits Crugher to seek prospective injunctive relief for violations of the FMLA's self-care provision.  Crugher's attempt to apply an implied right of action directly under *Ex parte Young* is without merit because his suit is pursuant to an express right of action—the FMLA.  *See* 29 U.S.C. § 2617(a)(2).

The dissent reaches the wrong conclusion and misplaces its reliance on *Mitchell v. Chapman*, 343 F.3d 811, 832 (6th Cir. 2003), stating that a suit against a state official seeking prospective relief is not expressly permitted by the FMLA.  We agree with the dissent that *Mitchell* precludes FMLA claims against state employees in their *individual* capacities.  *Id.* at 825–26; *see also Diaz*, 703 F.3d at 961.  However,  *Diaz* clarified that "[t]he Supreme Court and this Circuit barred suits *for damages* only, not for equitable relief."  *Diaz*, 703 F.3d 964 (emphasis in original).  We reasoned that the FMLA allows for equitable relief including reinstatement, and that the Eleventh Amendment does not bar "suits for equitable, prospective relief, such as reinstatement, against state officials in their official capacity."  *Id.* at 964.  And the FMLA expressly allows suit for equitable relief "against any employer *(including a public agency)* in any Federal or State court." 29 U.S.C. § 2617(a)(2) (emphasis added).  The dissent erroneously concludes that the FMLA's definition of employer excludes suits against state officials.  It does not.  It precludes suits against state officials in their *individual* capacities.  The dissent's position that the FMLA does not allow official capacity suits against state officials for injunctive relief because such suits are, in reality, nothing more than suits against the agency itself, ignores what we squarely held in *Diaz*: the Eleventh Amendment does not bar suits against state officials for equitable relief to enforce the FMLA's self-care provision.  *Diaz*, 703 F.3d 964.  Given our conclusion in *Diaz* and the FMLA's allowance of such suits, the dissent's reliance on *Mitchell* is misplaced.

---

parte Young*, and it expressly recognized that these questions are a "matter of debate."  *Id.* at 554 n.4. Additionally, *Chase Bank* involved a question of federal preemption.  Even if the Supremacy Clause did create an implied cause of action in such suits, *Chase Bank* simply does not indicate that it creates a cause of action where a federal statute *expressly* provides the plaintiff a cause of action for equitable relief.

So too is Crugher's reliance on *Seminole Tribe* and *Diaz* for his position that "the remedies available in an action to *enforce* a right conferred by statute pursuant to *Ex parte Young* are not the same as the remedies conferred by the federal statute itself." Appellant Br. at 31 (emphasis in original). *Diaz* did not authorize a remedy different than the remedy available in the FMLA: reinstatement. Rather, *Diaz* clarified that state officials could be sued under the FMLA for reinstatement, despite *Coleman*, because § 2617(a)(1)(B) was a constitutional exercise of Congress's powers as applied to state officials. *Diaz*, 703 F.3d at 964. The remedy Crugher seeks here is reinstatement to his position; section 2617(a)(1)(B) of the FMLA expressly provides for this remedy.

Crugher reads *Coleman* too broadly. *Coleman* did not invalidate the entirety of the FMLA's remedial scheme. The Supreme Court in *Coleman* held that the portion of the FMLA allowing for money damages under the self-care provision was unconstitutional because Congress did not validly abrogate states' sovereign immunity. 132 S. Ct. at 1338. The Supreme Court did not say anything about the portion of the self-care provision allowing for equitable claims including reinstatement. Therefore, we "refrain from invalidating more of the statute than is necessary." *Regan v. Time, Inc.*, 468 U.S. 641, 652 (1984). Indeed, Crugher's argument is foreclosed by *Diaz* where we explicitly stated that § 2617(a)(1)(B) providing for equitable relief is constitutional:

> Congress did not have to abrogate sovereign immunity where a state employee sues a state official in his or her official capacity seeking equitable, prospective relief in the form of reinstatement for violations of the self-care provision because the Eleventh Amendment does not act as a bar to such suits in the first instance. *Section 2617(a)(1)(B) was, therefore, a constitutional exercise of Congress's powers.*

*Diaz*, 703 F.3d at 964 (emphasis added). *Diaz* thus indicates that Crugher's claim is not an "*Ex parte Young* claim," but rather a claim by a state employee seeking reinstatement directly under § 2617(a)(1)(B).

Finally, accepting Crugher's position would accord a reinstatement action by a state employee against a state official a longer statute-of-limitations period than an action brought by a private employee against a private employer. There is no basis for

this distinction.  Indeed, the *Ex parte Young* exception is based on a legal fiction that "a state official who enforces [a] law 'comes into conflict with the superior authority of [the] Constitution,' and therefore is 'stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct." *Stewart*, 131 S. Ct. 1632 (second bracket in original).  It follows, then, that the official who is now treated as an individual based on *Ex parte Young* should be subjected to the same statute-of-limitations period as any other private employer.  Thus, because the FMLA expressly provides a cause of action for equitable relief, it is appropriate to apply the statute of limitations in the FMLA instead of looking to an analogous state statute or the general federal statute of limitations for civil actions contained in 28 U.S.C. § 1658(a).

For these reasons, we hold that the two-year statute of limitations period contained in the FMLA applies to reinstatement claims brought by state employees against state officials under § 2617(a)(1)(B).

**B.**

In an attempt to overcome the fact that he did not file his claim within the two-year limitations period required under the FMLA, Crugher says that he alleged a willful violation allowing him to take advantage of the FMLA's three-year limitations period.  This argument lacks merit.

Under our precedents, the central inquiry in determining whether a violation of the FMLA is willful is "whether the employer intentionally or recklessly violated the FMLA." *Hoffman v. Prof'l Med Team*, 394 F.3d 414, 417 (6th Cir. 2005).  A plaintiff "must do more than make the conclusory assertion that a defendant acted willfully." *Katoula v. Detroit Entm't, LLC*, ___ F. App'x ___, 2014 WL 783099, at *2 (6th Cir. Feb. 27, 2014).[9]  Indeed, "[a]s we have explained in a non-FMLA context, although conditions of a person's mind may be alleged generally, 'the plaintiff still must plead facts about the defendant's mental state, which, accepted as true, make the state-of-mind

---

[9]Although in *Ricco v. Potter*, 377 F.3d 599 (6th Cir. 2004) we held that a conclusory statement of willfulness was sufficient to survive a motion to dismiss, *Ricco* predated *Iqbal* and *Twombly*.  *See Katoula*, 2014 WL 783099, at *2 n.1.

allegation 'plausible on its face.' " *Id.* (quoting *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012)).

Here, Crugher's complaint is devoid of any allegations supporting a finding of willfulness. The allegations in the complaint, if accepted as true, only establish a causal connection between Crugher's termination and his FMLA leave. There are no factual allegations that Prelesnik, or any other MDOC employee, acted intentionally or recklessly to violate Crugher's rights under the FMLA. At best, the complaint can be read to state a claim that MDOC employees were negligent in interpreting Crugher's rights under the FMLA as they interrelated with his use of sick leave. This is not enough to support a finding of willfulness.

## C.

Alternatively, Crugher says that the district court erred in denying his motion to amend to allege willfulness. Crugher says that had he been able to amend the complaint, he would have supported his allegations of willfulness with an e-mail authored by Prelesnik in 2007 when he was employed as warden of the Richard A. Handlon Correctional Facility. In the e-mail Prelesnik sent to department heads, he stated:

> Time and attendance has once again become a problem on the part of some staff. I am directing all supervisors to monitor staffs patterns of sick leave and or annual leave abuse. . . I do not like the negative approach but I intend to hold abusers accountable. Supervisors are to use progressive discipline to help resolve this problem.
>
> Personnel will monitor abuse of the family medical act. . . We will be asking the medical provider if the pattern of use is consistent with the employees medical need. We will repeat this process ever[y] thirty days as the employee renews the leave. . .
>
> Medical appointments must be made thirty days in advance of use and given to the supervisors. The family medical act allows the employer to know 30 days in advance of scheduled medical appointments to allow the employer to plan its operations. Last minute call in for a medical appointment will not qualify under the family medical act.

Unfortunately for Crugher, even if he were permitted to amend his complaint to add facts relevant to Prelesnik's e-mail, he fails to establish a plausible claim of

willfulness. First, the substance of the e-mail does not support a finding of willfulness. The e-mail merely shows that Prelesnik was attempting to limit abuses of FMLA leave. Second, the e-mail does not relate to anything done at ICF relating to Crugher. Therefore, as the district court correctly found, allowing Crugher to amend his complaint would be futile.

## IV.

For the reasons stated above, we AFFIRM the district court's opinion.

———————————

## DISSENT

———————————

CLAY, Circuit Judge, dissenting. The majority concludes that this action is untimely pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, even though it was brought under *Ex parte Young*, 209 U.S. 123 (1908). The majority is wrong on two counts. First, Plaintiff has pleaded a willful violation of the FMLA, and therefore his complaint is timely under the applicable three-year statute of limitations, 29 U.S.C. § 2617(c)(2). Second, in the alternative, this Court should hold that Congress' default four-year statute of limitations, 28 U.S.C. § 1658(a), applies to *Ex parte Young* claims asserting violations of the FMLA. Because this action as pleaded was timely, I respectfully dissent.

## BACKGROUND

Plaintiff Corey Crugher started work for the Michigan Department of Corrections ("MDOC") in 1994. In 1999, Plaintiff developed a chronic medical condition, identified as generalized anxiety disorder and irritable bowel syndrome, that caused periodic flare-ups, preventing him from performing his usual job responsibilities. Plaintiff first took leave in March 2007 under the FMLA's self-care provision, 29 U.S.C. § 2612(a)(1)(D). In November 2009, Plaintiff was transferred to Ionia Maximum Correctional Facility ("Ionia"), where Defendant John Prelesnik is warden. Defendant had a history of scrutinizing employees who availed themselves of FMLA leave. In June 2007, while Defendant was the warden of a different MDOC facility, he sent the following e-mail to his staff:

> Time and attendance has once again become a problem on the part of some staff. I am directing all supervisors to monitor staffs patterns of sick leave and or annual leave abuse. The State budget is in poor condition and over time is up at [the correctional facility] that is not in our budget. There are no funds to supplement the budget. As such I am directing a close review of abusive patterns. . . . Personnel will monitor abuse of the family medical act [sic].

(R. 8-1, Pl.'s Mot. to Dismiss Opp'n Ex. A, at 124.)

Plaintiff continued to suffer from his medical condition while at Ionia, and continued to take periodic FMLA leave. But in February 2010, Plaintiff received a memo chiding him for taking too much time off. On April 15, 2010, Constance Partee, Ionia's human resources manager, placed Plaintiff on "interim rating" for improperly taking FMLA leave. The interim rating warned Plaintiff that his "time and attendance will be closely monitored for unscheduled absences." (R. 1-5, Compl. Ex. E., at 20.) On September 17, 2010, Plaintiff's supervisor "commend[ed]" Plaintiff for his compliance with the interim rating. (R. 1-6, Compl. Ex. F, at 23.) But in approximately October 2010, Plaintiff was apparently placed back on interim rating for a period of 180 days. This interim rating was written by "Sgt. B. Wenzel," and is unsigned and undated. Sgt. Wenzel accused Plaintiff of repeatedly violating time and attendance requirements by taking leave on several occasions from August to October 2010. Plaintiff alleges that he was not presented with this document until after his termination and asserts that he was never placed on a second interim rating.

On November 22, 2010, Plaintiff was approved for intermittent FMLA leave for a six-month period. Plaintiff supported his application for leave with a Certification of Employee's Serious Health Condition completed by Dr. David Mohlman. Dr. Mohlman certified that he had treated Plaintiff on multiple occasions for his medical condition; that Plaintiff would probably be afflicted for the rest of his life; and that Plaintiff's symptoms included "severe abdominal pain, diarrhea, bleeding, cramping, [and] fatigue." (R. 1-8, Compl. Ex. H, at 29.) Despite this certification, on November 23, 2010, Partee placed Plaintiff on another interim rating for noncompliance with MDOC leave policies. Plaintiff alleges that he also was not presented with this interim rating.

On December 31, 2010, Plaintiff received his annual rating—"Meets Expectations." (R. 1-11, Compl. Ex. K, at 36.) Among other things, Plaintiff was given this satisfactory rating for his integrity and honesty, defined as "displaying high standards of ethical conduct and understanding the impact of violating these standards on the organization, staff, and others; being trustworthy." (*Id.* at 39.) Nevertheless, on

January 11, 2011, Plaintiff was terminated from his position at MDOC, ostensibly as a final resolution of his second interim rating. Plaintiff's union filed a grievance, but that process ended with the conclusion that Plaintiff was fired for failing to improve his behavior during his second interim rating.

On April 16, 2013, two years and three months after he was fired, Plaintiff filed a one-count complaint in the Western District of Michigan seeking reinstatement for violations of the FMLA pursuant to *Ex parte Young*. Defendant moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6), and the district court granted the motion. *Crugher v. Prelesnik*, No. 13-CV-416, 2013 WL 5592969 (W.D. Mich. Oct. 10, 2013). The district court held that Defendant was not the proper target for an *Ex parte Young* suit since Defendant was not personally "involved in the violation of [Plaintiff's] rights under the FMLA."[1]  *Id.* at *3. The district court further held that Plaintiff's suit was barred by the FMLA's statute of limitations. *See id.* at *3–4. This appeal timely followed.

## DISCUSSION

The FMLA's self-care provision allows an eligible employee to take up to twelve weeks of leave "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). States are immune from suit for violations of the self-care provision. *See Coleman v. Court of Appeals of Md.*, 132 S. Ct. 1327, 1332 (2012). But plaintiffs can bring suit for these violations against individual state officers for prospective relief—including reinstatement—under *Ex parte Young*. *See Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 966 (6th Cir. 2013). The statute of limitations for FMLA actions is two years; three years if the violation is willful. *See* 29 U.S.C. § 2617(c). The majority concludes that the FMLA's statute of limitations applies to Plaintiff's *Ex parte Young* claim. Even if

---

[1]The majority does not address this prong of the district court's ruling, which is undoubtedly incorrect. Plaintiff's *Ex parte Young* claim seeks reinstatement to remedy a "*continuing* violation of federal law." *Green v. Mansour*, 474 U.S. 64, 68 (1985) (emphasis added). Determining whether Plaintiff is entitled to reinstatement requires an examination of historical events, but the relief sought is entirely prospective. *See Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 965 (6th Cir. 2013*); Carten v. Kent State Univ.*, 282 F.3d 391, 396 (6th Cir. 2002). I would therefore hold that the proper defendant in an *Ex parte Young* action for reinstatement is not the official personally involved in a plaintiff's termination, but the official that has the authority under state law to reinstate the plaintiff.

this were correct, the FMLA's limitations scheme still mandates reversal since Plaintiff has pleaded a willful violation of the statute.

"An employer commits a willful violation of the FMLA when it acts with knowledge that its conduct is prohibited by the FMLA or with reckless disregard of the FMLA's requirements; therefore, the determination of willfulness involves a factual question." *Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004). Plaintiff alleges that he received permission to take FMLA leave, received positive performance reviews, and was commended for adhering to the interim rating he received for leave-related irregularities. Nevertheless, Plaintiff was terminated—apparently for failing to improve his behavior after receiving a second interim rating. But Plaintiff alleges that he never received this interim rating, or the follow-up communication from Partee. The documentary evidence supports Plaintiff's allegation. The second interim rating was not signed by the officer who supposedly authored it, nor was it signed by Plaintiff to indicate receipt. The Partee memo was issued just one day after Plaintiff was formally *approved* for FMLA leave. These allegations and the supporting documentary evidence "allow[] [us] to draw the reasonable inference" that Plaintiff's employer was assembling a bogus dossier with the intent to fire him. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, Plaintiff has plausibly alleged that Defendant was aware of his obligations under the FMLA, but tried to "affirmatively evade[] them." *Hoffman v. Prof'l Med Team*, 394 F.3d 414, 419 (6th Cir. 2005). Because Plaintiff has pleaded a willful violation of the statute and has brought his claim within three years of his termination, I would reverse the district court and remand for further proceedings.

But even if the majority were correct and the alleged violation was not willful, we should still reverse on the basis that this is an *Ex parte Young* cause of action, not an FMLA cause of action. The Eleventh Amendment bars private suits against a state "regardless of the nature of the relief sought," *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984), but subject to exceptions. A state may consent to suit, or Congress may abrogate state sovereign immunity pursuant to § 5 of the Fourteenth Amendment. *See Coleman*, 132 S. Ct. at 1333. In addition, under *Ex parte*

*Young*, a plaintiff can bring a suit against a state official for prospective relief to end an "ongoing violation of federal law." *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quotation marks omitted). *Ex parte Young* does not simply provide a jurisdictional exception with regard to the Eleventh Amendment—it recognizes that a "cause of action" to ensure compliance with a federal statute "is implied under the Supremacy Clause." *Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 554 (6th Cir. 2012).[2]

Even though the *Ex parte Young* cause of action springs from a constitutional source, Congress can regulate its contours with respect to particular statutory rights. On one extreme, "where Congress has prescribed a detailed remedial scheme for the enforcement against a State of a statutorily created right," this fact militates against recognizing an *Ex parte Young* cause of action to enforce the same statute. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 74 (1996). We held in *Diaz* that the FMLA's remedial scheme was not robust enough to crowd out an *Ex parte Young* remedy. *See Diaz*, 703 F.3d at 966. But we did not affirmatively address whether Congress intended to regulate procedures for *Ex parte Young* actions to enforce FMLA rights. *Seminole Tribe* suggests that to answer this question, we should consider whether the regulatory scheme refers only to duties and remedies applied to states as entities, or whether the scheme "is broad enough to encompass both a suit against a State (under [a Fourteenth Amendment] abrogation theory) and a suit against a state official (under an *Ex parte Young* theory)." *Seminole Tribe*, 517 U.S. at 75 n.17. Thus a statute that authorizes suit against a state official, a state's governor, or even "'any person,'" would mean that Congress intended to allow an *Ex parte Young* suit and regulate the procedures for bringing it. *Id.* (quoting 33 U.S.C. § 1365(a)).

---

[2]We are not alone in this holding. *See New Orleans & Gulf Coast Ry. v. Barrois*, 533 F.3d 321, 330 (5th Cir. 2008); *Joseph A. ex rel. Wolfe v. Ingram*, 275 F.3d 1253, 1265 (10th Cir. 2002); *Burgio & Campofelice, Inc. v. N.Y. State Dep't of Labor*, 107 F.3d 1000, 1006 (2d Cir. 1997); *Guar. Nat'l Ins. Co. v. Gates*, 916 F.2d 508, 512 (9th Cir. 1990). The majority's jurisdiction-only interpretation of *Ex parte Young* closely tracks Justice Souter's opinion in *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 177–78 (1996) (Souter, J., dissenting). One small point—Justice Souter lost. And as explained below—and contrary to the contention in footnote 8 of the majority opinion—the FMLA does not expressly provide a cause of action for equitable relief to enforce the statute's self-care provision.

Looking at the FMLA through the *Seminole Tribe* lens, we see that the statute imposes duties that tend to be the "sort likely to be performed by an individual state executive officer." *Id.* But any notion that the FMLA itself authorizes suits against individual state officials begins and ends with our decision in *Mitchell v. Chapman*, 343 F.3d 811 (6th Cir. 2003). In *Mitchell*, we performed a detailed textual analysis of the FMLA's definition of "employer," which includes "a public agency," as well as "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4). Since the statute also allows for suits seeking "damages or equitable relief . . . against any employer (including a public agency)," 29 U.S.C. § 2617(a)(2), a casual reader might conclude that the FMLA authorizes suits against the agents of public agencies. Wrong. The FMLA's definition of employer *excludes* these public officers. *See Mitchell*, 343 F.3d at 832. The majority brushes off *Mitchell*'s textual analysis, and claims that even though individual state officials cannot be sued for damages, the FMLA allows equitable suits against them in their representative capacities. Wrong again. A suit against a state officer in his official capacity is nothing more than a suit against the agency itself. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Since the Eleventh Amendment bars suits against a state to enforce the FMLA's self-care provision, it equally bars suits against a state's alter ego—and remember, the Eleventh Amendment bars equitable suits just as it bars suits for damages. *See Pennhurst*, 465 U.S. at 100. It is only through *Ex parte Young* that an officer acquires a quantum state—at once "stripped of his official or representative character," *Ex parte Young*, 209 U.S. at 160, and "responsible in his official capacity for enforcing a state law." *Carten v. Kent State Univ.*, 282 F.3d 391, 396 (6th Cir. 2002). This necessary legal fiction is nowhere to be found in the FMLA.

Even though interpreting the FMLA with reference to *Ex parte Young* is not without difficulty, we should be guided above all by the statute's text. The FMLA does not allow suits against state officials in their individual capacities, and does not discuss suits against them in their representative capacities. We should therefore hold that the procedures of the FMLA do not apply to *Ex parte Young* actions that seek to enforce the

statute's substantive provisions. As a result, the FMLA's limitations scheme would not apply to Plaintiff's *Ex parte Young* cause of action.

If the FMLA's statute of limitations would not apply to Plaintiff's claim of its own force, we must look to some other source for the rule. Traditionally, we would borrow the analogous statute of limitations from state law, *see Wilson v. Garcia*, 471 U.S. 261, 275 (1985), or perhaps from federal law, if the state limitations period would "frustrate or interfere with the implementation of national policies, or be at odds with the purpose or operation of federal substantive law." *N. Star Steel Co. v. Thomas*, 515 U.S. 29, 34 (1995) (quotation marks and citations omitted). But Congress has done away with the need to search for analogous laws by enacting a default four-year statute of limitations that applies to all claims "arising under an Act of Congress enacted after" December 1, 1990. 28 U.S.C. § 1658(a). Even though *Ex parte Young* provides the remedial vehicle, Plaintiff's claim still arises under the FMLA, insofar as his hoped-for "relief necessarily depends on resolution of a substantial question of federal law." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006) (quotation marks omitted) (construing 28 U.S.C. § 1331); *see also Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004) (holding that § 1658(a) applies if the plaintiff's claim "was made possible by a post-1990 enactment"). The FMLA was enacted after December 1, 1990, and Plaintiff's *Ex parte Young* claim arises under that statute. Plaintiff's claim is thus timely under the four-year statute of limitations of § 1658(a).

**CONCLUSION**

Plaintiff has pleaded a willful violation of the FMLA and therefore his complaint is timely. In the alternative, this claim is timely under Congress' default four-year statute of limitations. I therefore respectfully dissent.