*33 Justice Kennedy
announced the judgment of the Court and delivered an opinion, in which The Chief Justice, Justice Thomas, and Justice Alito joined.
The question in this case is whether a state employee is allowed to recover damages from the state entity that employs him by invoking one of the provisions of a federal statute that, in express terms, seeks to abrogate the States’ immunity from suits for damages. The statute in question is the Family and Medical Leave Act of 1993, 107 Stat. 6, 29 U. S. C. § 2601 et seq. The provision at issue requires employers, including state employers, to grant unpaid leave for self care for a serious medical condition, provided other statutory requisites are met, particularly requirements that the total amount of annual leave taken under all the Act’s provisions does not exceed a stated maximum. § 2612(a)(1)(D). In agreement with every Court of Appeals to have addressed this question, this Court now holds that suits against States under this provision are barred by the States’ immunity as sovereigns in our federal system. See 626 F. 3d 187 (CA4 2010) (case below); Nelson v. University of Tex., 535 F. 3d 318 (CA5 2008); Miles v. Bellfontaine Habilitation Center, 481 F. 3d 1106 (CA8 2007) (per curiam); Toeller v. Wisconsin Dept. of Corrections, 461 F. 3d 871 (CA7 2006); Touvell v. Ohio Dept, of Mental Retardation & Developmental Disabilities, 422 F. 3d 392 (CA6 2005); Brockman v. Wyoming Dept. of Family Servs., 342 F. 3d 1159 (CA10 2003); Laro v. New Hampshire, 259 F. 3d 1 (CA1 2001).
*34 I
A
The Family and Medical Leave Act of 1993 (FMLA or Act) entitles eligible employees to take up to 12 workweeks of unpaid leave per year. An employee may take leave under the FMLA for: (A) “the birth of a son or daughter ... in order to care for such son or daughter,” (B) the adoption or foster-care placement of a child with the employee, (C) the care of a “spouse, . . . son, daughter, or parent” with “a serious health condition,” or (D) the employee’s own serious health condition when the condition interferes with the employee’s ability to perform at work. 29 U. S. C. § 2612(a)(1). The Act creates a private right of action to seek both equitable relief and money damages “against any employer (including a public agency) in any Federal or State court of competent jurisdiction.” § 2617(a)(2). As noted, subparagraph (D) is at issue here.
This Court considered subparagraph (C) in Nevada Dept. of Human Resources v. Hibbs, 538 U. S. 721 (2003). Subpar-agraph (C), like (A) and (B), grants leave for reasons related to family care, and those three provisions are referred to here as the family-care provisions. Hibbs held that Congress could subject the States to suit for violations of subpar-agraph (C), § 2612(a)(1)(C). That holding rested on evidence that States had family-leave policies that differentiated on the basis of sex and that States administered even neutral family-leave policies in ways that discriminated on the basis of sex. See id., at 730-732. Subparagraph (D), the self-care provision, was not at issue in Hibbs.
B
Petitioner Daniel Coleman was employed by the Court of Appeals of the State of Maryland. When Coleman requested sick leave, he was informed he would be terminated if he did not resign. Coleman then sued the state court in the United States District Court for the District of Mary *35 land, alleging, inter alia, that his employer violated the FMLA by failing to provide him with self-care leave.
The District Court dismissed the suit on the basis that the Maryland Court of Appeals, as an entity of a sovereign State, was immune from the suit for damages. The parties do not dispute the District Court’s ruling that the Maryland Court of Appeals is an entity or instrumentality of the State for purposes of sovereign immunity. The District Court concluded the FMLA’s self-care provision did not validly abrogate the State’s immunity from suit. App. to Pet. for Cert. 15-20. The Court of Appeals for the Fourth Circuit affirmed, reasoning that, unlike the family-care provision at issue in Hibbs, the self-care provision was not directed at an identified pattern of gender-based discrimination and was not congruent and proportional to any pattern of sex-based discrimination on the part of States. 626 F. 3d 187. Certio-rari was granted. 564 U. S. 1035 (2011).
II
A
A foundational premise of the federal system is that States, as sovereigns, are immune from suits for damages, save as they elect to waive that defense. See Kimel v. Florida Bd. of Regents, 528 U. S. 62, 72-73 (2000); Alden v. Maine, 527 U. S. 706 (1999). As an exception to this principle, Congress may abrogate the States’ immunity from suit pursuant to its powers under § 5 of the Fourteenth Amendment. See, e. g., Fitzpatrick v. Bitzer, 427 U. S. 445 (1976).
Congress must “mak[e] its intention to abrogate unmistakably clear in the language of the statute.” Hibbs, 538 U. S., at 726. On this point the Act does express the clear purpose to abrogate the States’ immunity. Ibid. (“The clarity of Congress’ intent” to abrogate the States’ immunity from suits for damages under the FMLA “is not fairly debatable”). Congress subjected any “public agency” to suit under the FMLA, 29 U. S. C. § 2617(a)(2), and a “public agency” is de *36 fined to include both “the government of a State or political subdivision thereof” and “any agency of ... a State, or a political subdivision of a State,” §§203(x), 2611(4)(A)(iii).
The question then becomes whether the self-care provision and its attempt to abrogate the States’ immunity are a valid exercise of congressional power under § 5 of the Fourteenth Amendment. Section 5 grants Congress the power “to enforce” the substantive guarantees of § 1 of the Amendment by “appropriate legislation.” The power to enforce “‘includes the authority both to remedy and to deter violation[s] of rights guaranteed’” by §1. See Board of Trustees of Univ. of Ala. v. Garrett, 531 U. S. 356, 365 (2001) (quoting Kimel, supra, at 81). To ensure Congress’ enforcement powers under § 5 remain enforcement powers, as envisioned by the ratifiers of the Amendment, rather than powers to redefine the substantive scope of § 1, Congress “must tailor” legislation enacted under § 5 to “ ‘remedy or prevent’ ” “conduct transgressing the Fourteenth Amendment’s substantive provisions.” Florida Prepaid Postsecondary Ed. Expense Bd. v. College Savings Bank, 527 U. S. 627, 639 (1999).
Whether a congressional Act passed under § 5 can impose monetary liability upon States requires an assessment of both the “‘evil’ or ‘wrong’ that Congress intended to remedy,” ibid., and the means Congress adopted to address that evil, see City of Boerne v. Flores, 521 U. S. 507, 520 (1997). Legislation enacted under § 5 must be targeted at “conduct transgressing the Fourteenth Amendment’s substantive provisions.” Florida Prepaid, supra, at 639; see Kimel, supra, at 88; City of Boerne, 521 U. S., at 525. And “[t]here must be a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end.” Id., at 520.
Under this analysis Hibbs permitted employees to recover damages from States for violations of subparagraph (C). In enacting the FMLA, Congress relied upon evidence of a well-documented pattern of sex-based discrimination in family- *37 leave policies. States had facially discriminatory leave policies that granted longer periods of leave to women than to men. 538 U. S., at 730-731. States also administered facially neutral family-leave policies in gender-biased ways. Id., at 732. These practices reflected what Congress found to be a “pervasive sex-role stereotype that caring for family members is women’s work,” id., at 731, a stereotype to which even this Court had succumbed in earlier times, id., at 729. Faced with “the States’ record of unconstitutional participation in, and fostering of, gender-based discrimination in the administration of leave benefits,” Hibbs concluded that requiring state employers to give all employees the opportunity to take family-care leave was “narrowly targeted at the faultline between work and family — precisely where sex-based overgeneralization has been and remains strongest.” Id., at 735, 738.
B
The same cannot be said for requiring the States to give all employees the opportunity to take self-care leave. Petitioner advances three arguments for allowing employees to recover damages from States that violate the FMLA’s self-care provision: The self-care provision standing alone addresses sex discrimination and sex stereotyping; the provision is a necessary adjunct to the family-care provision sustained in Hibbs; and the provision eases the burden on single parents. But what the family-care provisions have to support them, the self-care provision lacks, namely, evidence of a pattern of state constitutional violations accompanied by a remedy drawn in narrow terms to address or prevent those violations.
1
Standing alone, the self-care provision is not a valid abrogation of the States’ immunity from suit. When the FMLA was enacted, “ninety-five percent of full-time state- and local-government employees were covered by paid sick leave *38 plans and ninety-six percent of such employees likewise enjoyed short-term disability protection.” Brief for State of Texas et al. as Amici Curiae 13-14 (hereinafter Texas Brief) (citing Bureau of Labor Statistics, U. S. Dept, of Labor, Employee Benefits in State and Local Governments 17-26 (1994) (hereinafter BLS Rept.)). The evidence did not suggest States had facially discriminatory self-care leave policies or that they administered neutral self-care leave policies in a discriminatory way. And there is scant evidence in the legislative history of a purported stereotype harbored by employers that women take self-care leave more often than men. Congress considered evidence that “men and women are out on medical leave approximately equally.” H. R. Rep. No. 101-28, pt. 1, p. 15 (1989) (hereinafter H. R. Rep.). Nothing in the record shows employers formulated self-care leave policies based on a contrary view.
Without widespread evidence of sex discrimination or sex stereotyping in the administration of sick leave, it is apparent that the congressional purpose in enacting the self-care provision is unrelated to these supposed wrongs. The legislative history of the self-care provision reveals a concern for the economic burdens on the employee and the employee’s family resulting from illness-related job loss and a concern for discrimination on the basis of illness, not sex. See, e. g., S. Rep. No. 103-3, pp. 11-12 (1993); H. R. Rep., at 23. In the findings pertinent to the self-care provision, the statute makes no reference to any distinction on the basis of sex. See 29 U. S. C. § 2601(a)(4) (“[Tjhere is inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods”). By contrast, with regard to family care Congress invoked concerns related to gender. See § 2601(a)(5) (“[D]ue to the nature of the roles of men and women in our society, the primary responsibility for family caretaking often falls on women, and such responsibility affects the working lives of women more than it affects the working lives of men”).
*39 It is true the self-care provision offers some women a benefit by allowing them to take leave for pregnancy-related illnesses; but as a remedy, the provision is not congruent and proportional to any identified constitutional violations. At the time of the FMLA’s enactment, “ninety-five percent” of state employees had paid sick-leave plans at work, and “ninety-six percent” had short-term disability protection. Texas Brief 13-14 (citing BLS Rept. 17-26). State employees presumably could take leave for pregnancy-related illnesses under these policies, and Congress did not document any pattern of States excluding pregnancy-related illnesses from sick-leave or disability-leave policies. “Congress . . . said nothing about the existence or adequacy of state remedies.” Florida Prepaid, 527 U. S., at 644. It follows that abrogating the States’ immunity from suits for damages for failure to give self-care leave is not a congruent and proportional remedy if the existing state leave policies would have sufficed.
2
As an alternative justification for the self-care provision, it has been suggested that the provision is a necessary adjunct to the family-care provisions. Petitioner argues that employers may assume women are more likely to take family-care leave than men and that the FMLA therefore offers up to 12 weeks of leave for family care and self care combined. According to petitioner, when the self-care provision is coupled with the family-care provisions, the self-care provision could reduce the difference in the expected number of weeks of FMLA leave that different employees take for different reasons.
The fact that self-care leave could have this effect does not mean that it would. If, for example, women are expected to take 20 days of family-care leave per year and men to take 10, and women and men are each expected to take 5 days of self-care leave per year, the difference in the expected number of days of leave and cost to the employer remains the *40 same regardless of the availability of self-care leave. Congress made no findings, and received no specific testimony, to suggest the availability of self-care leave equalizes the expected amount of FMLA leave men and women will take. Even if women take family-care leave more often than men, men do not take self-care leave more often than women; and there is little evidence that employers assume they do. See H. R. Rep., at 15. Petitioner suggests that some women will be expected to take all 12 weeks of leave under the FMLA for family-care purposes, and therefore that any amount of self-care leave taken by men will diminish the difference in the amount of FMLA leave taken by men and women. But there is little evidence to support petitioner’s assumption about the magnitude of women’s expected FMLA leave for family-care purposes. And men are only expected to take five days of sick leave per year, see ibid., so the self-care provision diminishes the difference in expected leave time by a maximum of five days. And that is only to the extent women use all their available FMLA leave for family-care reasons. Petitioner’s overly complicated argument about how the self-care provision works in tandem with the family-care provisions is unconvincing and in the end does not comply with the clear requirements of City of Boerne.
In addition petitioner’s first defense of the self-care provision contradicts his second defense of the provision. In the first defense, the Court is told employers assume women take more self-care leave than men. See Tr. of Oral Arg. 10-12. In the second defense, the Court is told the self-care provision provides an incentive to hire women that will counteract the incentives created by the family-care provisions because employers assume women take more family-care leave than men. But if the first defense is correct, the second defense is wrong. In other words, if employers assume women take self-care leave more often than men (the first defense), a self-care provision will not provide an incentive to hire women. To the contrary, the self-care pro *41 vision would provide an incentive to discriminate against women.
There is “little support in the record for the concerns that supposedly animated” the self-care provision. Florida Prepaid, supra, at 639. Only supposition and conjecture support the contention that the self-care provision is necessary to make the family-care provisions effective. The evidence documented in support of the self-care provision is, to a large degree, unrelated to sex discrimination, or to the administration of the family-care provisions. See supra, at 38. Congress made no findings and did not cite specific or detailed evidence to show how the self-care provision is necessary to the family-care provisions or how it reduces an employer’s incentives to discriminate against women. And “Congress . . . said nothing about the existence or adequacy of state” sick-leave policies. Florida, Prepaid, supra, at 644; see Garrett, 531 U. S., at 373. Under this Court’s precedents, more is required to subject unconsenting States to suits for damages, particularly where, as here, it is for violations of a provision (the self-care provision) that is a supposedly preventive step in aid of already preventive provisions (the family-care provisions). See Florida Prepaid, supra, at 642 (“[T]he legislative record still provides little support for the proposition that Congress sought to remedy a Fourteenth Amendment violation in enacting the Patent Remedy Act”); Kimel, 528 U. S., at 88 (“One means by which we have made such a determination ... is by examining the legislative record containing the reasons for Congress’ action”).
The “few fleeting references” to how self-care leave is inseparable from family-care leave fall short of what is required for a valid abrogation of States’ immunity from suits for damages. Florida Prepaid, supra, at 644. These “isolated sentences clipped from floor debates” and testimony, Kimel, supra, at 89, are stated as conclusions, unsupported by evidence or findings about how the self-care provision interrelates to the family-care provisions to counteract *42 employers’ incentives to discriminate against women. Congress must rely on more than abstract generalities to subject the States to suits for damages. Otherwise, Congress could choose to combat the purported effects of the family-care provisions by allowing employees to sue States that do not permit employees to take vacation time under the FMLA. There is nothing in particular about self-care leave, as opposed to leave for any personal reason, that connects it to gender discrimination. And when the issue, as here, is whether subparagraph (D) can abrogate a State’s immunity from damages, there is no sufficient nexus, or indeed any demonstrated nexus, between self-care leave and gender discrimination by state employers. Documented discrimination against women in the general workplace is a persistent, unfortunate reality, and, we must assume, a still prevalent wrong. An explicit purpose of the Congress in adopting the FMLA was to improve workplace conditions for women. See 29 U. S. C. §§ 2601(b)(4), (5). But States may not be subject to suits for damages based on violations of a comprehensive statute unless Congress has identified a specific pattern of constitutional violations by state employers. See City of Boerne, 521 U. S., at 532.
3
Petitioner’s last defense of the self-care provision is that the provision helps single parents retain their jobs when they become ill. This, however, does not explain how the provision remedies or prevents constitutional violations. The fact that most single parents happen to be women, see, e. g., S. Rep. No. 103-3, at 7, demonstrates, at most, that the self-care provision was directed at remedying employers’ neutral leave restrictions which have a disparate effect on women. “Although disparate impact may be relevant evidence of... discrimination ... such evidence alone is insufficient [to prove a constitutional violation] even where the Fourteenth Amendment subjects state action to strict scrutiny.” Garrett, supra, at 372-373; see Tuan Anh Nguyen *43 v. INS, 533 U. S. 53, 82-83 (2001) (O’Connor, J., dissenting); Washington v. Davis, 426 U. S. 229, 239 (1976). To the extent, then, that the self-care provision addresses neutral leave policies with a disparate impact on women, it is not directed at a pattern of. constitutional violations. Because, moreover, it is “unlikely that many of the [neutral leave policies]... affected by” the self-care provision are unconstitutional, “the scope of the [self-care provision is] out of proportion to its supposed remedial or preventive objectives.” Kimel, supra, at 82; see City of Boerne, supra, at 519.
Of course, a State need not assert its Eleventh Amendment immunity from suits for damages. See, e. g., Sossamon v. Texas, 563 U. S. 277, 284 (2011) (“A State . . . may choose to waive its immunity in federal court at its pleasure”). Discrimination against women is contrary to the public policy of the State of Maryland, see, e. g., Maryland’s Fair Employment Practices Act, Md. State Govt. Code Ann. § 20-606 (Lexis 2009), and the State has conceded that the Act is good social policy, see Tr. of Oral Arg. 35. If the State agrees with petitioner that damages liability for violations of the self-care provision is necessary to combat discrimination against women, the State may waive its immunity or create a parallel state-law cause of action.
⅜ * *
As a consequence of our constitutional design, money damages are the exception when sovereigns are defendants. See, e. g., Pennhurst State School and Hospital v. Halderman, 451 U. S. 1, 29 (1981). Subjecting States to suits for damages pursuant to §5 requires more than a theory for why abrogating the States’ immunity aids in, or advances, a stated congressional purpose. To abrogate the States’ immunity from suits for damages under § 5, Congress must identify a pattern of constitutional violations and tailor a remedy congruent and proportional to the documented violations. It failed to do so when it allowed employees to sue *44 States for violations of the FMLA’s self-care provision. The judgment of the Court of Appeals is affirmed.

It is so ordered.