[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 19-14981

Non-Argument Calendar

_____

SHERRI L. RENNER,

Plaintiff-Appellant,

*versus*

SUPREME COURT OF FLORIDA,
FLORIDA BAR,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 4:17-cv-00451-RH-CAS

_____

Before JORDAN, NEWSOM, and TJOFLAT, Circuit Judges.

PER CURIAM:

Sherri Renner, a disbarred attorney proceeding *pro se*, appeals the District Court's grant of the Florida Bar's ("the Bar") and the Florida Supreme Court's motions to dismiss her complaint filed under the Americans with Disabilities Act ("ADA")[1] and the Rehabilitation Act of 1973 ("RA")[2] relating to her conditional admission to the bar based on her mental health issues and her ultimate disbarment for failure to comply with those conditions. The District Court granted the motions to dismiss her ADA and RA discrimination claims based on Eleventh Amendment immunity and her ADA retaliation claim for failure to state a claim. For the reasons set forth below, we affirm.

## I.

Renner was barred by the state of Florida in 2005. Her admission to the Florida Bar was conditional, though, based on her history of treatment for her mental health disorder. She signed a

---

[1] Pub. L. No. 101–336, 104 Stat. 327 (1990) (codified as amended at 42 U.S.C. § 12101 *et seq.*).

[2] Pub. L. No. 93–112, 87 Stat. 355 (1973) (codified as amended at 29 U.S.C. § 701 *et seq.*).

consent agreement with the Florida Board of Bar Examiners[3] to enter the practice of law in a probationary period.  She was required to (1) consult at least monthly with a mental healthcare professional who would give quarterly reports to the Bar on her ability to practice law; and (2) submit quarterly statements (along with a $75 monitoring fee with each report) to the Bar that she was complying with the conditions.  According to the agreement, this probationary period was indefinite and could only be ended if (1) she practiced for five years and, (2) at the end of that period, submitted to a comprehensive psychiatric exam, (3) the Bar-approved psychiatrist recommended unconditional admission, (4) the Florida Bar exercised its discretion to petition the Florida Supreme Court to have Renner unconditionally admitted, and (5) the Florida Supreme Court agreed.  In 2010, when the five-year period expired, Renner elected to undergo psychiatric evaluation twice. After the first psychiatrist refused to recommend unconditional admission, the Bar allowed her to seek a second evaluation from a psychiatrist who came to the same conclusion.  She then asked the Bar for a procedure to seek review before the Florida Supreme Court to have her conditions removed—and they stated that she could not file a petition with the Florida Supreme Court and instead gave her a list of approved psychiatric evaluators.  Renner then "opted to

---

[3] The Board of Bar Examiners is a separate entity that evaluates the character and fitness of applicants during the admission process.  The Bar regulates the conduct of attorneys after they are admitted.  Both entities are supervised by the Florida Supreme Court.

strategically default on the terms of her conditional admission to force [the] Bar to take some action."

On June 9, 2017, the Florida Board of Bar Examiners moved the Florida Supreme Court for an order to show cause why Renner should not be disciplined. It alleged that Renner had violated the terms of her conditional admission. The Florida Supreme Court then ordered Renner to show cause, to which she replied admitting the factual basis of the Bar's motion but argued that the conditions on her admission violated the ADA. On September 20, 2017, the Florida Supreme Court held that Renner was in contempt of its order, and ordered her license to be revoked within 30 days. Renner filed a motion for rehearing on October 5, 2017. Her license was revoked on October 20, 2017.

Renner sued the Florida Bar and the Florida Supreme Court on October 5, 2017, and filed an amended six-count complaint in February 2019. Count One of the amended complaint alleged a violation of the ADA by the Florida Bar, namely that requiring her to comply with the terms of her conditional admission and filing a motion for a show cause order with the Florida Supreme Court were both forms of discrimination against her for her disability. Count Two alleged a violation of the ADA by the Florida Supreme Court for disability discrimination. Renner alleged that by failing to establish procedures to challenge conditional admissions and by not offering her a hearing, the Florida Supreme Court discriminated against her because of her mental health disability. In Counts One and Two, Renner also alleged that the Bar and the Florida

Supreme Court operated a "procedural void." By using the term "procedural void," Renner meant that the lack administrative or judicial review of the Bar's and the Court's actions "[e]mboldened" them and shielded their discrimination. Count Three and Four alleged a violation of the RA for discriminatory procedure by the Florida Bar and the Florida Supreme Court, respectively, and mirrored the ADA allegations. Count Five and Six alleged violations of the ADA by the Florida Bar and the Florida Supreme Court, respectively, for retaliating against her when she opposed their allegedly unlawful practices through noncompliance with the conditions placed on her admission to the bar.

The Florida Supreme Court and Bar moved to dismiss on the basis of sovereign immunity and for Renner's failure to state a claim. The Florida Supreme Court argued that sovereign immunity was not abrogated for the violations Renner alleged. It also argued that Renner failed to state a claim for retaliation because her membership was not revoked for her disability but because of her noncompliance. Finally, the Florida Supreme Court argued that the RA did not apply to it because it does not receive federal funds. To show that it did not receive federal funds, the Florida Supreme Court attached exhibits to its motion to dismiss.

The District Court dismissed the complaint on November 1, 2019. The Court synthesized the ADA allegations in the complaint into four claims: (1) once Renner had passed the five-year period, the conditions were no longer necessary and continued compliance violated the ADA; (2) requiring her to pay for an evaluation by a

Bar-approved mental health professional violated the ADA; (3) disbarring her without a meaningful hearing violated the ADA; and (4) Renner's disbarment was in retaliation to her assertion of her rights under the ADA.  The Court determined that the ADA prohibits unnecessary conditions on bar licensing and assumed, for the purposes of the motions to dismiss, that the conditions were no longer necessary.  Still, the Court determined that the State was entitled to sovereign immunity under the Eleventh Amendment on the first three claims—because there was no abrogation of immunity. The first two claims did not involve a violation of the Fourteenth Amendment or a statutory violation that was proportional and congruent to a concern that animated the ADA.  As to the third claim, the Court found that Renner was entitled to due process under the Fourteenth Amendment based on her property or liberty interest in her bar membership, but that due process was not violated.  In its order, the District Court also rejected Renner's claim that she was entitled to a hearing to dispute the governing legal standard that the Florida Supreme Court would apply—that to remove the conditions required a favorable mental health evaluation.  The purpose of a hearing is to resolve factual disputes, the Court held, and because Renner did not dispute the relevant facts, Renner was not entitled to a hearing.[4]    Because Renner failed to

---

[4] The District Court rejected Renner's assertion that she had no option but to engage in non-compliance.  The Court said that she could have asked the Florida Supreme Court to modify its earlier order based on its inherent authority,

19-14981                Opinion of the Court                7

identify a Fourteenth Amendment violation, there was no abrogation of sovereign immunity. As to the fourth claim, the Court held that the retaliation claim failed on the merits because it was nonretaliatory to disbar Renner for willfully violating the conditions it placed on her admission.

Additionally, the Court determined that the RA discrimination claims were barred by sovereign immunity. Although the receipt of federal funds comes with waiver of immunity for RA claims, the Court held that the statutory waiver is coextensive with the RA. Because the RA only applies to departments that receive federal funds, the Court held that waiver only applies to those departments that receive funds. The Court, relying on the record, determined that neither the Bar nor the Florida Supreme Court receive federal funds. *See* 29 U.S.C. § 794(a); 42 U.S.C. § 2000d-7. Accordingly, it dismissed the RA claims.

## II.

We review *de novo* the grant of a motion to dismiss based upon a state's Eleventh Amendment immunity. *In re Emp. Discrimination Litig. Against State of Ala.*, 198 F.3d 1305, 1310 (11th Cir. 1999). "In doing so, we view the facts in the light most favorable to the plaintiff." *Parise v. Delta Airlines, Inc.*, 141 F.3d 1463, 1465 (11th Cir. 1998). To survive a motion to dismiss, a complaint

---

or she could have sought injunctive or declaratory relief in court based on the ADA.

must contain sufficient factual matter, which, if accepted as true, states a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). While we must accept all of the complaint's allegations as true, "we are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 2944 (1986). And we may affirm the judgment below "on any ground supported by the record." *United States v. Gibbs*, 917 F.3d 1289, 1293 n.1 (11th Cir. 2019).

On appeal, Renner first argues that the District Court erred in dismissing her ADA discrimination claims. Second, she argues that the District Court erred in dismissing her RA claims after considering extrinsic evidence without converting the motions to dismiss into motions for summary judgment. Third, she argues that the District Court erred when it concluded that she did not properly allege a retaliatory motive in violation of the ADA because, she asserts, noncompliance with the conditions of her admission is substantively different from violating those conditions. We address each in turn.

*A.*

Renner's initial arguments relate to her ADA discrimination claims. She first argues that the District Court erred by misinterpreting her complaint as to the "procedural void," which implicates her First Amendment rights and abrogates the State's sovereign immunity. She next argues that the Court erred in considering

extrinsic evidence in dismissing her complaint. Finally, her primary argument is that the Court improperly dismissed her complaint on sovereign immunity grounds, because Renner argues that she alleged a claim that would abrogate the State's immunity.

i.

Courts liberally construe *pro se* pleadings to do fairness those litigants. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). However, the district court is not required to "rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014) (internal citation and quotation marks omitted). "Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly." *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1222 (11th Cir. 1999).

Renner claims the District Court misapprehended her allegations of the "procedural void"—that is, the lack of procedures to challenge the Florida Supreme Court and the Florida Bar's decisions on conditional bar admittees—which she says implicates her First Amendment rights. She argues that this "procedural void" implicated her First Amendment rights for a variety of reasons, and therefore her Title II claim abrogated sovereign immunity. However, we cannot reach these grounds and the District Court did not err in overlooking the First Amendment as it relates to her ADA discrimination, because she did not allege any First Amendment violations in her complaint. The first time the First Amendment

10                       Opinion of the Court                    19-14981

was mentioned below was in the Bar's motion to dismiss.[5]    While she made allegations of First Amendment violations in her opposition to the motions to dismiss her ADA retaliation claims, that is insufficient.

First, the Court's duty is to assess the sufficiency of Renner's pleadings, not her opposition memorandum to the motions to dismiss. The District Court was not required to rewrite her complaint for her to include these allegations she now asserts on appeal. At best, her opposition memorandum could be construed as a motion for leave to amend her complaint, which is improperly raised. *Posner*, 178 F.3d at 1222.

Second, her opposition memorandum alleged that her *retaliation* claims implicated the First Amendment, not her discrimination claims—which is where the procedural void is relevant. Thus, she never raised the issue that the procedural void implicated the First Amendment to the District Court.

ii.

In considering a motion to dismiss, a court is generally restricted to reviewing the facts in the four corners of the complaint, including attachments or exhibits. *See Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir. 2006). However, a court can

---

[5] And the District Court did consider the First Amendment as it impacted her *retaliation claim*, assumed that the retaliation did implicate the First Amendment, and still dismissed the retaliation claims on the merits. As we discuss below, that decision was not error.

always consider and determine the proper law (and has a duty to), regardless of what the pleadings say. *See Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (noting that courts are "not bound to accept as true a legal conclusion" (internal citation and quotation marks omitted). And, even if a District Court errs, we will not overturn its decision if the error is harmless—that is, unless that error affects the litigant's substantial rights. Fed. R. Civ. P. 61.

Further, in September 2020, the Florida Supreme Court amended the conditional admission section of the Rules Regulating the Florida Bar, R. 1-3.2(b). *In re Amends. to Rule Regulating Fla. Bar - Rule 1-3.2(b)*, 301 So. 3d 857, 858 (Fla. 2020). Pursuant to the old rules, that were deleted but applied to Renner, the Florida Supreme Court could admit a person with a prior history of psychological problems to membership under the imposition of conditions of probation, including periodic psychological examinations. *Id.* at 858–59.

Here, Renner argues that the District Court erred in stating that psychological examinations were a "standard practice" of the Bar. However, this conclusion was based on the law and not extrinsic factual evidence, namely the Rules Regulating the Bar prior to amendment and in effect during Renner's conditional admission. *See id.* at 858–59. And any error in making this brief aside was

harmless and did not affect the Court's jurisdictional analysis.[6] *See* Fed. R. Civ. P. 61.

### iii.

Absent a state's consent, the Eleventh Amendment prohibits federal courts from hearing cases against a state or one of its agencies. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99–100, 104 S. Ct. 900, 908 (1984). Although not express by its terms, the Supreme Court has extended Eleventh Amendment protections to bar suits against a state in federal court by its own citizens. *Abusaid v. Hillsborough Cnty. Bd. of Cnty. Comm'rs*, 405 F.3d 1298, 1303 (11th Cir. 2005).

The Eleventh Amendment is no bar, however, where Congress has properly abrogated the state's sovereign immunity. *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304, 110 S. Ct. 1868, 1872 (1990). To abrogate a state's immunity, Congress must have (1) "unequivocally expressed its intent" to do so and (2) "acted

---

[6] Renner argues that due process required a hearing on whether the conditions on her bar license were necessary after five years. The District Court found no hearing was required because the only issue at the hearing would have concerned the proper governing standard. Renner argues that the Court erred when it said the "standard practice" of the Bar was to apply the governing standard of whether the conditionally admittee received a favorable psychiatric evaluation. But what the Bar's standard practice is does not matter, because Renner was not entitled to a hearing *to contest the governing standard.*

pursuant to a valid grant of constitutional authority." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73, 120 S. Ct. 631, 640 (2000).

As to the first requirement, Congress expressed its intent to abrogate state sovereign immunity for Title II ADA claims. *Tennessee v. Lane*, 541 U.S. 509, 518, 124 S. Ct. 1978, 1985 (2004); *see* 42 U.S.C. § 12202. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

As to the second requirement, Congress has the power to abrogate Eleventh Amendment immunity using its powers under § 5 of the Fourteenth Amendment for two types of claims. *See Nat'l Ass'n of the Deaf v. Florida*, 980 F.3d 763, 770 (11th Cir. 2020). First, Congress may validly abrogate sovereign immunity, including under Title II of the ADA, for cases that allege an actual violation of the Fourteenth Amendment. *United States v. Georgia*, 546 U.S. 151, 158–59, 126 S. Ct. 877, 881–82 (2006) (involving a claim for cruel and unusual punishment under the Eighth Amendment claim). So, because Congress has expressed an intent to abrogate states' sovereign immunity, if a person alleges a Title II ADA claim based on state action that is also violation of the Fourteenth Amendment, the state's sovereign immunity is abrogated for that claim. Violations of the Fourteenth Amendment include the prohibition on "irrational disability discrimination" embodied in the Equal Protection Clause. *Black v. Wigington*, 811 F.3d 1259, 1269

(11th Cir. 2016) (internal citation and quotation marks omitted). Under rational basis review, if there is any reasonably conceivable state of facts that could provide a rational basis for the classification, the classification must be upheld against an equal protection challenge. *Estrada v. Becker*, 917 F.3d 1298, 1310–11 (11th Cir. 2019).

A violation of the Fourteenth Amendment also occurs if a state deprives a person of "life, liberty, or property, without due process of law." U.S. Const., amend. XIV, § 1. The Due Process Clause requires, at a minimum, notice and the opportunity to be heard incident to the deprivation. *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). To sustain a procedural due process claim, a plaintiff generally must prove three elements: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Id.* (addressing a 42 U.S.C. § 1983 action). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 902 (1976) (internal citation and quotation marks omitted). However, "[d]ue process is flexible and calls for such procedural protections as the particular situation demands." *Id.* at 334, 96 S. Ct. at 902 (internal citation and quotation marks omitted). The value in an evidentiary hearing is lessened when the decision is based on routine and unbiased medical reports by specialists concerning a person they personally examined, showing fairness and reliability. *See id.* at 344–45, 96 S. Ct. at 907 (addressing whether a hearing was necessary prior to the decision to

discontinue disability benefits). Further, written submissions may be inadequate where "they [do] not provide an effective means for the recipient to communicate his case to the decisionmaker," such as where the "recipient[] lack[s] the educational attainment necessary to write effectively and [can]not afford professional assistance." *See id.* at 345, 96 S. Ct. at 907–08 (internal citation quotation marks omitted).

Second, Congress may also abrogate sovereign immunity based on proper prophylactic legislation under the Fourteenth Amendment. *Nat'l Assoc. of the Deaf*, 980 F.3d at 770–71. The Supreme Court has held that Congress may, in crafting "appropriate legislation" under § 5, remedy conduct beyond that forbidden by the Fourteenth Amendment's text, as long as the prophylactic legislation is tailored to remedy or prevent conduct transgressing the Fourteenth Amendment's substantive provisions. *Coleman v. Ct. of Appeals of Md.*, 566 U.S. 30, 36, 132 S. Ct. 1327, 1333–34 (2012). Therefore, "[t]here must be a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." *Id.* (internal citation and quotation marks omitted, alteration in original). Under the congruence and proportionality test, we must determine

> (1) the constitutional right or rights that Congress sought to enforce when it enacted the ADA[;] (2) whether there was a history of unconstitutional discrimination to support Congress's determination that prophylactic legislation was necessary; and

16                    Opinion of the Court                    19-14981

(3) whether Title II is an appropriate response to this
history and pattern of unequal treatment.

*Ass'n for Disabled Americans, Inc. v. Fla. Int'l Univ.*, 405 F.3d 954,
957 (11th Cir. 2005). Eleventh Amendment immunity may be val-
idly abrogated even if a fundamental right is not at stake, though
abrogation is more difficult to establish for non-fundamental rights.
*Nat'l Ass'n of the Deaf v. Fla.*, 980 F.3d 763, 772 (11th Cir. 2020).

The Supreme Court has held that Congress enacted Title II
of the ADA to enforce the Fourteenth Amendment's prohibition
on irrational disability discrimination and Due Process rights.
*Lane*, 541 U.S. at 522–23, 124 S. Ct. at 1988. In the findings and
purpose clause of the ADA, Congress did not find a history of un-
constitutional discrimination of disabled people with regard to pro-
fessional licensing or a history of retaliation against employees who
opposed unlawful employment discrimination against the disabled.
*See* 42 U.S.C. § 12101.

To state a viable Title II claim under the ADA, a plaintiff
must allege facts plausibly showing

(1) that [she] is a qualified individual with a disability;
(2) that [she] was either excluded from participation
in or denied the benefits of a public entity's services,
programs, or activities, or was otherwise discrimi-
nated against by the public entity; and (3) that the ex-
clusion, denial of benefit, or discrimination was by
reason of [her] disability.

*Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1083 (11th Cir. 2007).

The District Court did not err in dismissing Renner's ADA discrimination claims because she did not plausibly allege that the state's sovereign immunity had been validly abrogated. We agree with the Court's characterization of Renner's ADA discrimination counts, which boil down to three claims of discrimination: (1) the failure to remove her conditions that were properly imposed at the time of her admission; (2) that she was required to pay for and obtain favorable psychiatric evaluation; and (3) being disbarred without a hearing, which she argues violated the Due Process Clause. For each, we must consider whether Renner pled a violation of the Fourteenth Amendment, or an ADA violation that is congruent and proportional to a constitutional violation Congress sought to enforce with the ADA.

As to her first claim, the failure to remove the conditions on her bar license did not violate the Fourteenth Amendment or meet the congruence and proportionality standard. First, the failure to remove those conditions was not a direct violation of the Fourteenth Amendment because it was not irrational disability discrimination. The conditions were properly imposed when Renner was admitted due to her past mental health treatment in order to protect the public and administer justice, which is a rational basis to impose the restrictions. It is a rational basis for the continued imposition of those conditions until a medical evaluator deems otherwise. The failure to remove the conditions also was not congruent and proportional to concerns that animated adoption of the ADA, because Congress did not find a history of unconstitutional

18                    Opinion of the Court                    19-14981

discrimination against people with disabilities regarding profes-sional licensing. *See* 42 U.S.C. § 12101.

As to her second claim, the requirement that Renner pay for and obtain a favorable opinion from a bar-approved psychiatrist did not violate the Fourteenth Amendment or meet the congruence and proportionality standard. *See Georgia*, 546 U.S. at 158–59, 126 S. Ct. at 881–82; *Coleman*, 566 U.S. at 36, 132 S. Ct. at 1333–34. This policy is not irrational disability discrimination. Nor does this policy offend due process because there is constitutionally ade-quate process for any deprivation Renner suffered. Through the Bar's evaluation, Renner was given an opportunity to be heard five years after the conditions were put in place by a mental healthcare professional to determine whether unconditional admission was appropriate.

As to her third claim, her disbarment without a hearing on whether the conditions were still necessary did not violate the Due Process clause because the decision was primarily based on a med-ical evaluation by a professional who evaluated Renner personally and Renner only disputes the governing standard to be applied, not the facts. *See Mathews*, 424 U.S. at 344–45, 96 S. Ct. at 907–08. As an attorney, she was given a meaningful opportunity to be heard on the governing legal standard through the order to show cause and her response. *See id.* Renner also alleges that a constitutional deficiency in due process arises from the "procedural void" that the Florida Supreme Court created. However, her argument ignores the Florida Supreme Court's authority to issue "all writs necessary

to the complete exercise of its jurisdiction," which would include its orders related to the conditional admission of members of the bar.  Fla. Const. art. V § 3(b)(7); Fla. R. App. P. 9.030(a)(3); Fla. R. App. P. 9.100.

So, the District Court's order dismissing the ADA discrimination claims was not erroneous.

*B.*

Next, we turn to Renner's arguments about the dismissal of its RA claims.  Renner claims that the District Court erred by considering financial documents attached to the motions to dismiss.

A "motion to dismiss for lack of subject matter jurisdiction . . . can be based upon either a facial or factual challenge to the complaint."  *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007).  For a facial challenge, we take the allegations in the complaint as true solely to determine if the plaintiff alleged a basis for subject matter jurisdiction while a factual challenge considers matters outside the pleadings to determine if jurisdiction existed in fact.  *Id.*  A district court should only consider matters outside the pleading in factual attacks "[i]f the facts necessary to sustain jurisdiction do not implicate the merits of plaintiff's cause of action."  *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1261 (11th Cir. 1997).

When considering a motion to dismiss, the district court generally must limit its consideration to the complaint and any attached exhibits, or it must convert the motion to dismiss into a

motion for summary judgment. *Day v. Taylor*, 400 F.3d 1272, 1275–76 (11th Cir. 2005). However, a district court may also consider a document attached to a motion to dismiss without converting it to a motion for summary judgment, if the document is (1) central to the claim and (2) its authenticity is not challenged. *Id.* at 1276.

The RA bars the federal government from discriminating against persons with disabilities under the ADA. 29 U.S.C. § 791(f). The RA bars discrimination against people with disabilities for "any program or activity receiving Federal financial assistance." *Id.* § 794(a). The elements of a claim under the RA are that (1) an individual has a disability, (2) she is otherwise qualified for the position, and (3) she was unlawful discriminated against as a result of her disability. *Sutton v. Lader*, 185 F.3d 1203, 1207 (11th Cir. 1999).

Here, the District Court did not err in considering the extrinsic evidence of finances without converting the Bar's and Florida Supreme Court's motions to dismiss to motions for summary judgment because the motions factually challenged subject matter jurisdiction and the challenge did not involve an element of the RA claims. *See McElmurray*, 501 F.3d at 1251. Further, the financial exhibits were central to the RA claim as dispositive of whether the Bar and Florida Supreme Court were covered under the RA and, though Renner challenges their admissibility, their *authenticity* was not challenged.

*C.*

Finally, we turn to Renner's retaliation claim.

The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).  To establish a *prima facie* case of retaliation under the ADA, a plaintiff must show that (1) she engaged in a statutorily protected expression, (2) she suffered an adverse employment action, and (3) there was a causal link between the adverse action and her protected expression. *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1260–61 (11th Cir. 2001).

Pursuant to the Rules Regulating the Florida Bar in effect when Renner filed her complaint, failure to comply with conditions of probation could have "subject[ed] the member to all available disciplinary sanctions." *In re Amends. to Rule Regulating Fla. Bar - Rule 1-3.2(b)*, 301 So. 3d at 859 (stricken in current rules).  Proceedings following noncompliance were the same as proceedings following contempt. *Id.*  When a person is found in contempt, the Bar "must file a petition for contempt and order to show cause with the [Florida Supreme Court]."  R. Regulating Fla. Bar. At 3-7.11(f)(1)(A).

Here, the District Court did not err in dismissing Renner's complaint of retaliation for failure to state a claim.  Renner alleged

that the retaliation stemmed from noncompliance with conditions placed on her in her conditional admission, and the Rules Regulating the Florida Bar show that noncompliance requires the Bar to file a petition for contempt against any conditionally admitted bar member who engages in such noncompliance. The Bar claims that it would take this action for any individual who violated the conditions of their admittance. While Renner claims this reasoning is pretextual, she has not alleged any facts to plausibly support such an inference. *See Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. Further, while she claims that noncompliance was different from violating the conditions, her noncompliance had the same effect as violating the conditions and, as such, the Bar and Florida Supreme Court pursued a nonretaliatory motive in revoking her license through a contempt petition. Accordingly, we affirm.

**AFFIRMED.**