**Reversed and Remanded and Opinion filed June 24, 2025.**



In The

# Fifteenth Court of Appeals

---

### NO. 15-24-00071-CV

---

**TEXAS A&M UNIVERSITY, Appellant**

**V.**

**ERIN A. SNIDER, PH.D., Appellee**

---

**On Appeal from the 472nd District Court**
**Brazos County, Texas**
**Trial Court Cause No. 23-000631-CV-472**

---

### OPINION

This is an interlocutory appeal of an order denying Texas A&M University's plea to the jurisdiction on Dr. Erin Snider's retaliation claim under the Family and Medical Care Leave Act (FMLA). *See* 29 U.S.C. §§ 2601–54. The FMLA entitles eligible employees to a total of 12 workweeks of leave during any 12-month period for, as relevant here, the following reasons:

(C)   In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition.

(D)   Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

29 U.S.C. § 2612(a)(1)(C)–(D).  Subsection (C) is known as a "family-care" provision, while subsection (D) is known as the FMLA's "self-care" provision.  *Coleman v. Court of Appeals of Md.*, 566 U.S. 30, 34 (2012).  That distinction is important because it is undisputed that Congress abrogated Texas's Eleventh Amendment immunity for claims under the FMLA's family-care provisions, *Nevada Dep't of Hum. Res. v. Hibbs*, 538 U.S. 721, 724 (2003), but not for claims under the self-care provision, *Coleman*, 566 U.S. at 33, 39; *Univ. of Tex. at El Paso v. Herrera*, 322 S.W.3d 192, 198–201 (Tex. 2010).  In this case, Dr. Snider requested and received leave twice.  Her first request was after she suffered a miscarriage, and the second request was because she was undergoing in vitro fertilization (IVF) treatment.

Because the evidence does not raise a fact question on whether Dr. Snider took leave to care for a son or daughter—even an unborn son or daughter—with a serious health condition, we conclude Dr. Snider's FMLA leave was under the self-care provision and therefore the University is immune from suit.  Accordingly, we reverse the trial court's order.

## BACKGROUND

In September 2013, Dr. Snider accepted a tenure-track assistant professor position at the University and was expected to submit her application for promotion to a tenured position at the end of a five-year probationary period.  The probationary period, also referred to as a "tenure clock," could be extended for several reasons,

including for medical leave. For reasons discussed below, Dr. Snider requested and received one-year extensions to her tenure clock for the 2017-18 and 2018-19 academic years, both of which resulted in reduced leave schedules.

She first requested a tenure-clock extension for the 2017-18 academic year after suffering a second-trimester miscarriage. In the fall of 2017, Dr. Snider informed her supervisor of her miscarriage and the resulting medical issues that inhibited her ability to work, and her supervisor advised her that she could have a medical-leave extension to her tenure clock. The tenure-clock extension reduced her course load and research requirements for that year.

Dr. Snider sought another extension for the 2018-19 academic year because she was going to begin IVF treatment and was scheduled for an embryo transfer in the fall of 2018. She informed her supervisor about her upcoming IVF treatment and inquired about taking a second medical extension. Her supervisor was supportive of her request. She also emailed the University's human resources department to inquire about taking a partial medical leave, and human resources responded by providing FMLA paperwork to Dr. Snider. She received another one-year extension to her tenure clock, which reduced her teaching and research requirements again for that year. One embryo transfer was successful, and she became pregnant in the spring of 2019. Unfortunately, Dr. Snider suffered another miscarriage in May 2019.

At the end of her probationary period, Dr. Snider submitted her application for a tenure position. The University denied her application. Dr. Snider filed suit against the University claiming (1) violations of Chapter 21 of the Texas Labor Code and (2) violations of the FMLA. For the FMLA claim, Dr. Snider alleges she sought and took leave under both the family-care provision, 29 U.S.C. § 2612(a)(1)(C), and the self-care provision, *id.* § 2612(a)(1)(D). The petition alleges that Dr. Snider "suffered a serious health condition that required continuing treatment by a health care provider or

was caring for a son or daughter with a serious health condition." She alleges the University retaliated against her for taking FMLA leave.

The University filed a partial plea to the jurisdiction on Dr. Snider's FMLA claim arguing (1) that Dr. Snider did not plausibly allege she sought and took FMLA leave and (2) that the University's sovereign immunity from suit is not waived because Dr. Snider's claims fall under the self-care provision of the FMLA, not the family-care provision.

After a hearing in which evidence was presented, the trial court denied the University's partial plea to the jurisdiction. The University appealed.

## STANDARD OF REVIEW

A plea questioning the trial court's jurisdiction raises a question of law that is reviewed de novo. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007). When considering a plea to the jurisdiction, our analysis begins with the live pleadings. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012). We first determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). In doing so, we construe the pleadings liberally in favor of the plaintiff, and unless challenged with evidence, we accept all allegations as true. *Id*. at 226–27. The plea must be granted if the plaintiff's pleadings affirmatively negate the existence of jurisdiction or if the defendant presents undisputed evidence that negates the existence of the court's jurisdiction. *Heckman*, 369 S.W.3d at 150.

When, as is the case here, a "jurisdictional challenge implicates the merits of the [plaintiff's] cause of action and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists." *Miranda,* 133 S.W.3d at 227. In evaluating an evidentiary plea to the jurisdiction, the standard of

4

review "generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Id.* at 228. The evidence is reviewed in the light most favorable to the nonmovant to determine whether a genuine issue of material fact exists. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019).

## DISCUSSION

### I. Whether Dr. Snider sought and took leave under the FMLA

In its first issue, the University argues Dr. Snider was not protected under the FMLA because she did not seek and take FMLA leave. An employee must give her employer notice of her intention to take FMLA leave. *Acker v. General Motors, L.L.C.*, 853 F.3d 784, 788 (5th Cir. 2017) (citing 29 U.S.C. § 2612(e)(1)–(2)). The notice, however, need not expressly assert rights under the FMLA or even mention the FMLA. *Lanier v. Univ. of Tex. Sw. Med. Ctr.*, 527 F. App'x 312, 316 (5th Cir. 2013); 29 C.F.R. § 825.301(b). Rather, the notice must be "sufficient to reasonably apprise her employer that her request to take time off could fall under the FMLA." *Lanier*, 527 F. App'x at 316.

Here, the evidence shows Dr. Snider gave sufficient notice to inform the University that her leave request could fall under the FMLA. As explained above, she notified her supervisor of her miscarriage and her IVF treatment that gave rise to her requests for tenure-clock extensions that resulted in reduced leave schedules.[1] For the 2018-19 academic year specifically, Dr. Snider also emailed

---

[1] The FMLA allows an employee to take leave intermittently or on a reduced leave schedule for the care of a child with a serious health condition or for the employee's own serious health condition when such leave is medically necessary. 29 U.S.C. § 2612(b)(1); 29 C.F.R. § 825.202(b). The term "reduced leave schedule" means "a leave schedule that reduces the usual number of hours per workweek, or hours per workday, of an employee." 29 U.S.C. § 2611(9). Leave taken intermittently or on a reduced leave schedule does not reduce the total amount of leave available to an employee under the FMLA. 29 U.S.C. § 2612(b)(1).

the human resources department inquiring about taking partial medical leave, and the University provided FMLA paperwork to her.

The University agrees Dr. Snider's notice was sufficient to request leave based on the email she sent to the human resources department. The University argues, however, her leave was not actually taken under the FMLA, but rather under another type of leave. For this argument, the University relies on its own internal personnel document that reflects no FMLA hours were recorded as taken by Dr. Snider. The University also relies on the fact that the University's human resources department provided Dr. Snider a medical certification form for her doctor to complete as part of the FMLA paperwork, but a certification was never completed.

Under FMLA regulations, an employer is responsible for designating leave as FMLA-qualifying. 29 C.F.R §§ 825.301(a), .300(d)(1). If an employer does not have sufficient information to determine the reason for an employee's use of leave, the "employer should inquire further . . . to ascertain whether leave is potentially FMLA-qualifying." *Id.* § 825.301(a). An employer has the option to require a medical certification if the employee requests leave due to a serious health condition. 29 U.S.C. § 2613(a); 29 C.F.R. §§ 825.302(c), .305(a). "Failure to respond to reasonable employer inquiries regarding the leave request may result in denial of FMLA protection if the employer is unable to determine whether the leave is FMLA-qualifying." 29 C.F.R. §§ 825.302(c), .303(b); *see also id.* § 825.313(a) ("[I]f an employee fails to provide certification in a timely manner . . . then an employer may deny FMLA coverage until the required certification is provided."). The employer must notify the employee if it determines the leave will not be designated as FMLA-qualifying. *Id.* § 825.300(d)(1).

In reviewing the evidence in the light most favorable to Dr. Snider, we

6

conclude there is a fact question on whether her leave was taken under the FMLA. Her notices were sufficient to apprise the University that her request for medical extensions and reduced leave schedules could fall under the FMLA. Although Dr. Snider did not provide a medical certification, the University nevertheless granted her tenure-clock extension and allowed her to be on a reduced leave schedule for the 2018-19 academic year. Further, there is no evidence that the University required a medical certification when she requested a medical-leave extension after her miscarriage for the 2017-18 academic year, nor is there evidence the University ever notified Dr. Snider that her leave did not qualify under the FMLA.

Lastly, although the University's internal personnel document reflects that no FMLA hours were taken by Dr. Snider in the relevant years, it was the University's responsibility to determine whether Dr. Snider's leave was FMLA-qualifying and to designate it accordingly. 29 C.F.R §§ 825.301(a), .300(d)(1); *see also* Dep't of Labor Op. Letter, FMLA2019-1-A, 2019 WL 1514982, at *2 (Mar. 14, 2019) ("Once an eligible employee communicates a need to take leave for an FMLA-qualifying reason, neither the employee nor the employer may decline FMLA protection for that leave.") (citing 29 C.F.R. § 825.220(d); *Strickland v. Water Works and Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1204 (11th Cir. 2001)). An employer's failure to designate leave may "constitute interference with, restraint of, or denial of the exercise of an employee's FMLA rights." 29 C.F.R § 825.301(e); 29 U.S.C. § 2615(a)(1). Therefore, this evidence does not negate the fact question of whether Dr. Snider was protected under the FMLA.

Accordingly, we overrule the University's first issue.

## II. Whether Dr. Snider's FMLA leave was for self-care or family-care

In its second issue, the University argues that because Dr. Snider's leave was for post-miscarriage care, IVF treatment, and pregnancy related conditions, her FMLA

claim falls under the FMLA's self-care provision and therefore the University is immune from suit. *See Coleman*, 566 U.S. at 33, 39 (holding claims under FMLA self-care provision against states are barred by sovereign immunity); *Herrera*, 322 S.W.3d at 198–200 (same). Dr. Snider argues her claim falls under the family-care provision, for which immunity is waived, *Hibbs*, 538 U.S. at 735, because she took leave to care for her unborn daughters. The University takes the position that an unborn child is not covered under the FMLA.

The specific question of whether an unborn child is covered by the FMLA appears to be an issue of first impression in Texas. The family-care provision at issue in this case entitles eligible employees leave to care for a "son" or "daughter" who has a "serious health condition." 29 U.S.C. § 2612(a)(1)(C). "Son" or "daughter" means "a biological, adopted, or foster child, a stepchild, a legal ward, or a child of a person standing in loco parentis who is . . . under 18 years of age." *Id.* § 2611(12)(A); *see also* 29 C.F.R. § 825.102. The FMLA statutes and regulations do not expressly address whether an unborn child falls within this definition.[2]

---

[2] The parties cited two federal district court cases that have addressed this question: *Issa v. Texas Dep't of Crim. Just.*, No. 1:22–CV–01107-ADA, 2023 WL 4923971, at *1 (W.D. Tex. Aug. 1, 2023), *report and recommendation adopted*, 2023 WL 5352319, at *1 (W.D. Tex. Aug. 18, 2023) and *Proctor v. Riley Indus., Inc.*, 579 F. Supp. 3d 1127 (D. Ariz. 2022). In *Issa*, the court denied defendant's motion to dismiss because plaintiff, who was seven-months pregnant and requested to leave work to go to the hospital when she felt pain, plausibly alleged she sought leave to care for an unborn child who was suffering a serious health condition. *Issa*, 2023 WL 4923971, at *13. The court reasoned that the FMLA does not define "child" and does not state whether an unborn child qualifies as a child, son, or daughter under 18 years of age. *Id.* By contrast, in *Proctor*, the court concluded the FMLA does not cover an unborn child and that an expectant father could not take leave to care for his pregnant fiancé. *Proctor*, 579 F. Supp. 3d at 1130. The court also relied on regulations that expressly provide that "an expectant mother is entitled to FMLA leave for incapacity due to pregnancy, for prenatal care, or for her own serious health condition following the birth of the child, but only 'a spouse' is entitled to FMLA leave 'if needed to care for a pregnant spouse who is incapacitated or if needed to care for her during her prenatal care." *Id.* at 1131 (citing 29 C.F.R. § 825.120(a)(4)).

Dr. Snider also relies on Texas law that in general recognizes life begins at conception as support that the FMLA should be interpreted to include unborn children. *See e.g.*, Tex. Penal Code

8

Ultimately, we need not decide whether an unborn child is covered under FMLA. Even assuming without deciding that treatment of a serious health condition for an unborn child qualifies as family care under the FMLA, the evidence in this case does not raise a fact issue on whether Dr. Snider took leave to care for an unborn child who had a "serious health condition" as opposed to leave for her own pregnancy-related condition. A "serious health condition" means "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

Here, Dr. Snider's leave requests were initially for recovery after suffering a miscarriage and later for IVF treatment. Neither of those time periods involve the provision of health care for an unborn child in utero. The only evidence that there was an unborn child in utero during her leave was in the spring of 2019 when she became pregnant after a successful embryo transfer.[3] Dr. Snider testified that her doctors had concerns regarding her pregnancy given her previous miscarriage, the impact of various drugs administered during IVF, and because of her age. Due to those concerns, Dr. Snider testified this pregnancy carried additional risks for her and her unborn child. This evidence, however, does not raise a fact question that the unborn child herself had a serious health condition, as that term is defined by the FMLA. At most, it shows Dr. Snider had a pregnancy-related condition. FMLA regulations demonstrate that pregnancy-related illnesses are serious health conditions of the mother that fall under the self-care provision. *See* 29 C.F.R. §§ 825.115(b)

§ 1.07(26) (defining "individual" to include "an unborn child at every stage of gestation from fertilization until birth"); Tex. Civ. Prac. & Rem. Code § 71.001(3)–(4) (Wrongful Death Act defining "individual" to include unborn children and "death" to include failure of unborn child "to be born alive"); Tex. Health & Safety Code §§ 171.201–.212 (Texas Heartbeat Act).

[3] Both parties agree that the legal status of embryos created through the IVF process is not an issue presented in this case.

("serious health condition involving continuing treatment by a health care provider" includes "any period of incapacity due to pregnancy, or for prenatal care"), .120(a)(4) ("An expectant mother may take FMLA before the birth of the child for prenatal care or if her condition makes her unable to work."). In *Coleman*, which held a state's immunity is not waived for claims under the FMLA's self-care provision, both the plurality and dissenting opinions of the United States Supreme Court recognized that pregnancy-related illnesses fall under the self-care provision. *Coleman*, 566 U.S. at 39 ("[T]he self-care provision offers some women a benefit by allowing them to take leave for pregnancy-related illnesses."); *id.* at 58 ("The self-care provision . . . requir[es] employers to allow leave for 'ongoing pregnancy, miscarriages, . . . the need for prenatal care, childbirth, and recovery from childbirth.'") (quoting S.Rep. No. 103–3, p. 29 (1993), 1993 U.S.C.C.A.N. 3 at 31) (Ginsburg, J. dissenting).

There is no evidence in the record that Dr. Snider took leave because her unborn child was diagnosed with and treated for a serious health condition, as opposed to Dr. Snider's pregnancy-related condition. At most, the evidence demonstrates that Dr. Snider had a high-risk pregnancy and was under a doctor's care as a result. Her FMLA retaliation claim, therefore, falls under the self-care provision. 29 U.S.C. § 2612(a)(1)(D). Accordingly, the University is immune from Dr. Snider's FMLA claim. *See Coleman*, 566 U.S. at 39; *Herrera*, 322 S.W.3d at 198–200.

## III. Whether the University is immune from Dr. Snider's FMLA claim seeking equitable remedies

Lastly, the University argues Dr. Snider cannot seek equitable remedies under the *Ex Parte Young* exception to immunity for her FMLA claim. The *Ex Parte Young* exception to immunity from suit in federal court is similar to the *ultra vires* doctrine in Texas and requires a party to sue individuals in their official

capacities for prospective relief. *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 482 (5th Cir. 2008) ("*Ex Parte Young* subjects a state employee acting in her official capacity to suits for prospective relief that avoid the Eleventh Amendment bar, but the employee's conduct remains state action under the Fourteenth Amendment."); *see also Whole Woman's Health v. Jackson*, 642 S.W.3d 569, 573 n.5 (Tex. 2022); *City of El Paso v. Heinrich*, 284 S.W.3d 366, 374–75 (Tex. 2009) (comparing *Ex Parte Young* and *ultra vires* doctrines). Accordingly, neither the *Ex Parte Young* nor the *ultra vires* exception to immunity can apply as an exception to the University's immunity from suit.

In the trial court, Dr. Snider filed a motion for leave to add individual University employees in their official capacities, but the trial court did not rule on that motion before the University appealed. Because the motion for leave is pending before the trial court, the issue of whether the *ultra vires* or *Ex Parte Young* exceptions apply to those individuals is not before us.

## CONCLUSION

Because Dr. Snider's FMLA claim falls under the self-care provision, 29 U.S.C. § 2612(a)(1)(D), the University is immune from her FMLA claim. *See Coleman*, 566 U.S. at 33, 39; *Herrera*, 322 S.W.3d at 198–200. We therefore reverse the trial court's denial of the University's partial plea to the jurisdiction on Dr. Snider's FMLA claim and remand the case for further proceedings consistent with this opinion.

/s/Scott K. Field
Scott K. Field
Justice


Panel consists of Chief Justice Brister and Justices Field and Farris.

11